# BIRCHELL *a.* STRAUS.

*Supreme Court, First District; General Term, December,* 1858.

ARREST.—FALSE REPRESENTATIONS.—FRAUDULENT ASSIGNMENT.

A person who purchases goods upon a credit obtained on the faith of his representation that he is solvent, when in fact he is not solvent, is not liable to arrest in an action therefor if he believed his representations were true at the time he made them.

A fraud merely constructive, not involving moral guilt, is not ground of arrest.

The fact that a debtor has made an assignment which, by reason of the omission of schedules and of other informalities, is to be deemed fraudulent and void as against creditors, &c., does not render him liable to an arrest, at the suit of such a creditor, as having been guilty of a fraud, unless it is shown that he made the assignment with an actual fraudulent intent.

Appeal from an order at special term denying a motion to vacate order of arrest.

The facts are stated in the opinion.

*E. & E. F. Brown* and *Waldo Hutchins*, for the appellant.

*J. J. Townsend*, for the respondent.

DAVIES, P. J.—The defendants were arrested upon an order made by Justice Sutherland, dated July 2, 1858. The order was granted upon two affidavits—one of the plaintiffs, and the other by his attorney.

The affidavit of the plaintiff states that in July, 1857, he sold goods to the defendants, upon the faith of representations made by Abraham Emanuel, one of the defendants, to the effect that the firm of the defendants was responsible, and engaged in a flourishing and profitable business; and he swears that he sold the goods to the defendants "solely upon the faith of said representations."

He then proceeds to detail the subsequent acts and proceedings of the defendants;—that they failed on the 12th of September, 1857, and had made an assignment; that after such purchase they had sold goods to two brothers of the defendant Emanuel, which had not been paid for in full; and had done other acts, and from all which he states, and "therefore alleges, and his allegations are founded on the circumstances before detailed, that at the time of purchasing said goods the defendants were insolvent and unable to pay their indebtedness in full, and that they then knew of such insolvency; and that such representations were false and untrue, and then known to be so by said defendants."

The plaintiff therefore alleges, and his allegations are founded on the circumstances aforesaid—"that the defendants, at the time of incurring the above indebtedness, were not engaged in a flourishing or profitable business, and that they were guilty

of a fraud in contracting the debt for which this action is brought."

The affidavit of the plaintiff's attorney contains no new facts beyond annexing thereto a copy of the assignment made by the defendants ; and that at the time of its execution no schedule of the property assigned was annexed thereto, and that none was annexed until some three weeks thereafter.

The defendants, by their affidavits, deny in the most positive terms any representation made to the plaintiff of the character stated by him ; and they swear that the goods were purchased by *Joseph*, and not by *Abraham* Emanuel, as stated by plaintiff, at Germantown, in Pennsylvania—that Abraham Emanuel was not present when the purchase was made, but was in the city of New York: and Joseph swears that *he* purchased the goods, not of the plaintiff, but of his clerk, and that the plaintiff was not present at the time ; that the defendants had purchased goods of plaintiff since August 8, 1856, and had paid for all of such purchases except the last; and that this purchase was made in the same manner as the others, and that he made no representations whatever to induce such sale, or any representations of the kind stated by plaintiff.

Isaac Emanuel, not one of the defendants, stated that he was present at Germantown when Joseph Emanuel purchased the goods ; that neither the plaintiff nor Abraham Emanuel were present ; that no questions were asked Joseph of the character stated by plaintiff ; and that he made no representations of the kind stated by plaintiff, or any representations as to the solvency of defendants : that the goods were sold to Joseph by a clerk of the plaintiff.

We think, therefore, from this testimony, we are bound to assume that the plaintiff is mistaken in stating that he sold the goods to Abraham Emanuel, and that at the time of such purchase Abraham Emanuel, or either of the other defendants made to the plaintiff the representations stated in his affidavit, or any representations whatever, and that he is consequently mistaken in stating that he sold said goods " solely upon the faith of said representations."

Upon the assumption that the representations as stated by plaintiff had been made, and the goods sold on the faith of them, the facts stated by plaintiff showing their falsity are very feeble.

The correct rule on this subject is well laid down by Justice Balcom, in Gaffney *a.* Burton (12 *How. Pr. R.*, 516). He says, in that case, the affidavit upon which the defendant was arrested does not show "that the defendant knew that the representations were false, which he made on his ability to pay upon or at the time he purchased the goods of the plaintiff. If he believed his representations were true at the time he made them, he was not guilty of any fraud, however false they may have been."

In the present case, no fact is stated tending to show that if the representations had been made, the defendants had reason to believe the same was not then true. The fact of the purchase on the 10th of July, 1857, and the subsequent failure on the 12th of September in that year, is far from being conclusive of a fraudulent intent, when connected with the history of that period, and the great change which took place in those two months in the financial condition of the most solvent institutions and firms in this city and throughout the country. And the defendants state that during this period they paid to their creditors over the sum of $64,000, and purchased goods in the usual course of their business on credit to the amount of only about $30,000. And during the same period they sustained losses by the failure of other firms, in the aggregate, to over the sum of $40,000.

I find it impossible upon these facts, assuming the representations to have been made, that the defendants believed them to be false at the time. On the contrary, it seems to me they had every reason to suppose they were, on the 10th of July, 1857, solvent.

But it was earnestly urged on the argument that the order of the arrest should be retained, on the ground that the defendants had been guilty of fraud in making the assignment; or in other words, that the assignment being fraudulent and void, the defendants were guilty of fraud, and should not be discharged.

It seems to me that the language of the late Chief-justice Duer, concurred in by his associates in Spies *a.* Joel (1 *Duer*, 669), is quite pertinent on this point. He says : "It may be true, as the counsel for the plaintiffs has contended, that the Court of Appeals, by its recent decision, has settled the law, that the omission, in an assignment giving preferences, of and

provision relative to a possible surplus, is evidence of a fraudulent intent, which renders the assignment void under the statute. But in my judgment it is only a *constructive* fraud which is thus established, for I cannot regard the omission as evidence *per se* of an actual intent existing in the mind of the debtor and governing his act; and I am clear in the opinion that it is proof of an actual intent, that, in all cases in which fraud is charged, ought to be required to justify or sustain an order of arrest. The constructive guilt of a debtor, who is innocent in fact, can never be held by me to be a sufficient ground for his imprisonment."

In these views I entirely concur, and applying them to the present case, they dispose of the grounds upon which we are asked to retain this order of arrest. They are:

1st. That the conveying clause referred to a schedule for the description of the assigned assets, which was not in existence and never attached.

2d. No change of possession of the assigned estate.

3d. That an immediate delivery of the assigned property did not take place.

4th. That some of the preferred debts do not appear in the defendants' books.

5th. The assignee's refusal to give information as to the condition of the assets.

These positions, if established, may be evidence of constructive fraud, sufficient to set aside the assignment; but we fail to see that they are evidence *per se* of an actual fraudulent intent, on the part of the defendants, furnishing sufficient ground for their imprisonment.

The first objection was mainly relied on on the argument, and it was insisted that the omission to annex the schedule was conclusive evidence of the intent to defraud. The case of Minor *a.* Bunce (14 *Barb.*, 39) was relied on as establishing this position.

In that case the assignors granted to their assignees "all and singular the lands, &c., &c., more particularly enumerated and described in the schedule hereto annexed, marked A, to have and to hold," &c.

The court held, in that case, that the schedule was made part of the conveyance, and is referred to as containing a specification of property conveyed, and was intended to be annexed:

that in such a case it must be annexed, not only as a description
and specification of the property, but it is necessary, by the very
terms of the instrument, to complete the conveyance or transfer.
And that in that case the assignment was insensible, and as
against creditors did not convey the property to the assignees.

In the present case, the language used is, in the recitals of the
assignment, Whereas the said parties of the first part are in-
debted, &c., and are desirous to make arrangements for the
payment thereof by an assignment of *all their property and
effects* for that purpose, and there grant, &c., " all and singular
the goods, chattels, stocks, promissory notes, debts, things in
action, claims, demands, property, and effects, belonging to the
said parties of the first part, or either of them (except such
property as may be by law exempt from sale on execution), the
same being more particularly enumerated and described in a
schedule thereof, hereto annexed, marked schedule A." The
assignment also authorizes the assignees " to ask, demand, re-
cover, and receive of and from all and every person and per-
sons, *all* the property, debts, and demands belonging and owing
to the said parties of the first part."

The language used in this assignment is identical with that
employed in the case of Platt *a.* Lott, decided in the Court of Ap-
peals, June, 1858, and to which we have been referred.   Justice
Selden, in giving the opinion of the court in that case, says :
" If, in looking at the assignment in this case, we are able clearly
to see that it was the intent of the assignors to convey to the
assignees the whole of their property, we are bound to give
effect to that intent.   Were this question to depend solely upon
the main clause in the instrument, I should have very little doubt
as to the design with which it must have been executed.   Not
only the general terms in which that clause is couched, em-
bracing as they do all the property of the assignors, both real
and personal, but the emphatic language with which, as we
have seen it concluded—viz., ' of every description belonging to
the said parties of the first part, or in which they have any in-
terest whatever'—would seem to manifest a plain intent to con-
vey every thing which the assignors possessed.   It is true, this
clause is followed by the words, ' the same being more fully and
particularly enumerated and described in a schedule,' &c.   This,
however, by no means indicates an intention to qualify or limit

the broad - and comprehensive language previously used. A schedule would of course be necessary as a matter of convenience, and as a guide to the assignee; and the provision for its annexation, although it is thereby made a part of the assignment, does not warrant the inference that it was intended that if any portion of the property of the assignors should be omitted, which might well occur through accident or inadvertency, the title to such property should not pass to the assignee." He says, also, that this construction is strengthened by the fact that the assignment expressly recites that the assignors were desirous of providing for the payment of their debts, " by an assignment of *all their property* and effects for that purpose."

We must therefore hold that this case is an authority in point, for the position that the assignment now under consideration is not void by reason of the omission to annex the schedule mentioned therein, and that such omission is not evidence of even a constructive fraud in this case.

It certainly cannot be regarded as evidence of a fraudulent intent, warranting us to hold the defendants under an order of arrest.

The order appealed from must therefore be reversed with costs, and the order of arrest be vacated.