PORTER S. ROBERTS v. CHARLES S. RADCLIFF, *as Sheriff of Saline County.*

1. SALE—*Fraud*—*Verdict, Not Set Aside.* Where the good faith and validity of the sale of a stock of millinery by a failing debtor is challenged by the creditors, and it is shown that the vendee, who is a lawyer and real-estate agent residing in a distant city, and unacquainted with the millinery business, purchased all the property of the insolvent vendors for fifty per cent. of the cost-price, without taking an inventory of the same, and it appears that no money was paid by the vendee, but that the sale was made upon a long and unusual credit, the vendee giving his negotiable, unsecured, non-interest-bearing notes, due in six, twelve and eighteen months thereafter; and it is also shown that the sale was hurriedly made, in anticipation that the principal creditors were about to levy upon the goods and enforce the collection of their claims; and it was further shown that the vendors continued in the possession and control of the goods after the alleged sale, claiming to have been employed by the vendee: *Held,* That a verdict based on these facts, finding the sale to be invalid, will not be disturbed.

2. ——— *Intent to Hinder and Delay Creditors.* The sale of all the property of an insolvent debtor upon a long and unusual credit, where the necessary effect of which, as well as the intent of the parties, is to hinder and delay creditors in the collection of their claims, will be held void, although there may be an honest intention of the debtor to finally pay his entire indebtedness.

*Error from Saline District Court.*

REPLEVIN, brought by *Roberts* against *Radcliff,* as sheriff of Saline county. Trial at the November Term, 1883, and judgment for defendant. The plaintiff brings the case to this court. The opinion states the material facts.

*John Foster,* and *Chas. A. Hiller,* for plaintiff in error.

*J. G. Mohler,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Charles S. Radcliff, as sheriff of Saline county, seized a stock of millinery as the property of the Misses Maxey, under an attachment issued at the instance of

one of their creditors. Porter S. Roberts, who claimed to have purchased the goods about a week before the seizure, brought this action to recover the possession of the goods, and failing in his action, he comes to this court alleging error in the proceedings in the district court.

Numerous assignments of error were made, but only two of them are now insisted upon. The first is, that the verdict is not sustained by sufficient evidence and is contrary to law. The only controversy between the parties was in respect to the good faith and validity of the sale. It appears that the Misses Maxey, who had been engaged for some time in the millinery business at Salina, became financially embarrassed, and unable to meet the claims of their creditors. The plaintiff, who was a brother-in-law to the Misses Maxey, and a resident of Council Grove, learning of their embarrassed condition, went to Salina on January 22, 1883, for the alleged purpose of assisting them. Upon arriving there, he learned that they had been notified by a creditor who had an over-due claim of more than $700, that they must raise $200 on that day, and $50 a week thereafter until the debt was paid, or legal proceedings would be immediately taken to collect the claim. On the morning of that day the plaintiff, who was a lawyer and real-estate agent, purchased the stock of millinery without taking an invoice thereof. Although the vendors and vendee both claimed and testified that it was a *bona fide* sale, there are many circumstances connected with and surrounding the transaction which afford ground for suspicion, and from which the jury might well infer not only that it was made with intent to hinder and delay creditors in the collection of their claims, but to defraud them as well. In addition to the circumstance that the purchase was made without the taking of an inventory by one unacquainted with the business or with the value of such goods, the plaintiff admits that he agreed to pay for them only fifty per cent. of the cost-price, which was but fifty per cent. of the indebtedness against the goods. Then, instead of paying cash for the goods, he gave negotiable, unsecured and non-interest-bearing notes, of equal

amounts, due in six, twelve, and eighteen months respectively. By this transfer all the property of the insolvent debtors was withdrawn from the reach of their creditors, and this, with the long and unusual credit that was given, of necessity had the effect to hinder and delay their creditors.

The law presumes that the parties intend the usual and necessary consequences of their acts, and the jury could infer from the terms agreed on and methods employed, that the sale was made with the intent to hinder and delay creditors. But they were not left to inferences alone. It was admitted by the Maxeys that the transfer was hurriedly made, on account of a notice that the principal creditors were about to begin an attachment proceeding; and for the purpose of preventing them from appropriating the goods in payment of their claims. Roberts had knowledge that this was their purpose, and aided them in accomplishing it. It is true that Roberts and the Maxeys testified that the transfer was made in the interest of the creditors, so that all might share in the property and be treated alike, and with the intention that the entire indebtedness should be finally paid; but their declarations and conduct cannot be easily reconciled. Even if the Maxeys had an honest intention to pay the creditors in the end, they had no right to interpose obstacles to legal process, or to purposely dispose of their property in such a way as would hinder the creditors in the enforcement of their claims. The creditors are entitled to have the property of the debtor appropriated without delay to the payment of their claims, and a transfer made by the debtor where the intention or the necessary effect is to delay creditors, cannot be upheld. Here both vendors and vendee practically confess that their purpose in transferring the property was to delay the principal creditors in enforcing their claims; and this intent is of itself sufficient to avoid the transaction.

Another circumstance which tends to throw suspicion upon the transaction is, that the Maxeys continued in the possession and control of the property after the same as before the alleged sale. They claim to have been employed by Roberts as sales-

women. Roberts did not intend to remove to Salina, nor to abandon his occupation as a lawyer and real-estate agent at Council Grove, and give personal attention to the millinery business at Salina. He returned home on the same day on which the purchase was made, without moving the goods, changing the sign, or giving any notice to the public that there had been a change of proprietorship, leaving to manage the new business of which he was unacquainted the same persons who had failed and become insolvent when managing and carrying on the same business for themselves. In § 3 of the statute of frauds, it is provided that —

"Every sale or conveyance of personal property unaccompanied by an actual and continued change of possession, shall be deemed to be void as against the purchasers without notice, and existing or subsequent creditors, until it is shown that such sale was made in good faith, and upon sufficient consideration."

This rule, and the fact that no change of possession was made, places the burden of showing the transfer to be a *bona fide* one upon Roberts, and in this the jury may have found that he failed. A careful perusal of the testimony satisfies us that it is not only sufficient to sustain the verdict when assailed in this court, but that it abundantly justified the jury in the verdict which was rendered.

We have examined the instruction criticised by the plaintiff in error, and find nothing in it misleading, or which could have in any way prejudiced his interests.

The judgment will be affirmed.

All the Justices concurring.