## JULIUS EICHENBERG *vs.* FREDERICK I. MARCY.

A statute provided for the issue of a writ of arrest whenever the plaintiff made affidavit that he had a just claim against the defendant on which he expected to recover a sum sufficient to give jurisdiction to the court, and also that the defendant had committed fraud in the concealment of his property or in the disposition of the same.

*Held*, that it was immaterial whether the fraud committed was actual fraud or legal fraud or constructive fraud.

Hence when an insolvent defendant had transferred much of his estate by deed of trust which was upon its face under the Rhode Island statutes of fraudulent conveyances fraudulent and void as against non assenting creditors:

*Held*, that a writ of arrest properly issued and that the arrest should not be discharged.

*Held*, further, that the assent of a majority of the creditors to the deed and the motives of the defendant in executing it were immaterial.

ASSUMPSIT. On defendant's motion to be released from arrest.

*January* 28, 1893. TILLINGHAST, J. This is an application by the defendant, under Pub. Stat. R. I. cap. 206, § 9, for release from arrest, which was made upon the writ in this case in pursuance of an affidavit endorsed thereon, charging that said defendant had committed fraud in the disposition of his property.

Said affidavit was made under said § 9, which provides, amongst other things, that a writ of arrest may be issued, " whenever the plaintiff in an action to be commenced by such writ, his agent or attorney, shall make an affidavit to be en-

dorsed thereon or annexed thereto, that the plaintiff has a just claim against the defendant upon which the plaintiff expects to recover, in the action commenced by such writ, a sum sufficient to give jurisdiction to the court to which such writ is returnable; *and also* . . . . that the defendant . . . . has committed fraud . . . . in the concealment of his property, or in the disposition of the same."

The facts upon which said application for discharge from arrest are based, are substantially as follows:   The plaintiff, having a claim against the defendant for goods sold and delivered, amounting to $357.13, was threatening an attachment of the defendant's property to satisfy said claim, whereupon it was mutually agreed that, in consideration of the plaintiff's forbearance to bring suit, the defendant would not make any conveyance of his property for the benefit of his creditors, without first giving notice to the plaintiff's attorney.   The defendant, however, subsequently, July 14, 1892, did make a conveyance of the property connected with his business, by a certain trust deed, without giving said notice, whereupon the plaintiff caused him to be arrested as aforesaid.   Said trust deed, which, it is to be observed, does not purport to be a general assignment of all the defendant's property, after describing the property conveyed and the mortgage thereon, to which the conveyance is made subject, provides as follows, viz. :

"But upon special trust nevertheless that the said James M. Scott shall forthwith take possession and seizin of the same and shall use his best skill, judgment and efforts to so conduct and manage the same as to be most advantageous to the parties interested, and should the consent of said mortgagees be obtained, to continue the business of manufacturing and selling jewelry for such time as the same can be done at a profit, not exceeding the term of three years from the date hereof and for that purpose to buy such stock, tools, supplies and appliances and employ such help as he deems necessary or advisable, and to select such designs and supervise the manufacture of goods, and to sell and convey such products.

"For more effectually accomplishing the purposes of this document said trustee is to collect as speedily as possible and from time to time as opportunity is offered, all debts, demands and sums of money due and owing to me on account of said business, with power to compromise and accept partial payment in full settlement whenever he deems it advisable, and to sell and convey at public or private sale all or any of the present or the then trust property on such terms as he sees fit and for the purposes of exchange for more desirable articles or articles needed by reason of depreciation of appliances or changes of market or classes of goods to reduce the amount invested or other reason satisfactory to said trustee.

"From the proceeds of sales and collections aforesaid the said trustee shall first pay all sums due and owing from me to persons for wages of labor, and from time to time shall pay over as rapidly as accumulations permit, dividends or partial payments to my other creditors ratably and in proportion to their respective claims against me, in such amounts as in his discretion seems advisable, but in all cases reserving and first paying his expenses contracted in carrying on said business and his other duties under this deed, including a reasonable compensation for services of himself as well as such persons as he employs in any capacities and such payments as are required by said mortgagees to prevent, or induce them not to foreclose said mortgage or take possession of the mortgagor's property.

"And I hereby constitute and appoint the said James M. Scott my true and lawful attorney irrevocable for me and in my name or in his name or otherwise as the case may require, to do all such acts, matters and things in and about the several matters above mentioned and referred to, with full power of substitution and revocation, as he or his substitutes deem necessary for the best interest of my creditors and for the proper execution of the uses, purposes and trusts herein created as fully and effectually as I could do the same, if personally acting in the matter."

Said deed was subsequently ratified and approved by a large

majority of the defendant's creditors, but the plaintiff did not join therein. The defendant was insolvent at the time of the making of said conveyance. Proof was submitted tending to show the good faith of the defendant in making said deed, and of the trustee named therein, in receiving the same, and this was not contradicted.

Under the case as thus outlined, the defendant contends, that said conveyance, having been made in good faith, and with no fraudulent intent, and having been immediately ratified and approved by a large majority of his creditors; and also having been made for the purpose of avoiding the inevitable loss incident to a forced sale of an unusually extensive plant, the defendant committed no actual fraud thereby, and hence is entitled to be released from arrest, even though the court shall find that the making of said conveyance amounted to a technical or constructive fraud upon his creditors. In other words the defendant contends that in order to warrant his arrest under the statute above quoted, he must have been guilty of *actual* fraud in the disposition of his property, as distinguished from *fraud in law* or *constructive* fraud.

That said trust deed is fraudulent and void under our statute of fraudulent conveyances, as to non assenting creditors, there can be no doubt. It puts that part of the defendant's property which is mentioned and described therein, which, it may be inferred, constitutes the bulk of his estate, out of his hands and control, and, if allowed to stand, beyond the reach of his creditors by ordinary process of law, for such length of time, not exceeding perhaps, the term of three years, as said business can be carried on at a profit by the trustee, unless said trustee in the meantime shall be able, and, in his discretion deem it advisable, to pay and discharge the debts of the defendant, either in whole or in part, out of the "*accumulations*" made to said property. The purpose of the defendant, as clearly disclosed in said deed, was to preserve said property intact, for such a period of time, within said limit, as the business could be carried on at a profit, leaving his creditors meanwhile, to take something, or nothing,

according as said business should prove successful or otherwise, and subject also, to the absolute discretion of said trustee, as to whether, in *any* event, the whole, or any part of their claims shall be paid within said time.  The intent to hinder and delay the defendant's creditors by such a provision as that referred to, is clearly manifest.  And that the defendant expected, or at least hoped to personally profit by such a disposition of his property, is so plain, that "he who runs may read."  Moreover, the fraudulent purpose of said deed is so written into it as to render it incapable of explanation or defence by evidence *aliunde*.  *Austin* v. *Sprague Manuf. Co.*, 14 R. I. 464, 476; *Gere* v. *Murray*, 6 Minn. 305, 316.  In short, it shows upon its face, that it must necessarily have the effect to unreasonably hinder and delay creditors in the collection of their claims, and hence contains in itself, conclusive evidence of a fraudulent intent. *Kavanagh* v. *Beckwith*, 44 Barb. S. C. 192; *Bigelow* v. *Stringer*, 40 Mo. 195, 205.  Said deed is also fraudulent in that it gives a preference in favor of his employés, for "all sums due or owing . . . for wages of labor," regardless of the amount thereof, and of the time when earned, which is in violation of Pub. Stat. R. I. cap. 237, § 14.

Having thus found that said conveyance is fraudulent, we come to the principal question in the case, which is, did the making of this conveyance by the defendant warrant the plaintiff in charging him with fraud in the disposition of his property, and in causing his arrest as aforesaid?  We think this question must be answered in the affirmative.  For, said deed being not only fraudulent upon its face, but also, as we have already seen, fraudulent in fact, in that it is inconsistent with an honest intent, it therefore logically and necessarily follows that the defendant committed fraud in the making thereof.  Nor is it material whether in the making of said deed the defendant was conscious of any moral wrong.  The statute is based upon the theory that every one is capable of perceiving what is wrong; and if he deliberately does what is forbidden thereby, he is not allowed to say that he did not intend to do it.  Moreover, it is a familiar principle of law, that

every man is presumed to intend the necessary consequences of his acts; 8 Amer. & Eng. Encyc. of Law, 753, and cases cited note 4. If, therefore, he performs an act which necessarily delays, hinders or defrauds his creditors, the law presumes that it is done with a fraudulent intent. *Pope & Son* v. *Wilson*, 7 Ala. 690, 694; *Sims* v. *Gaines*, 64 Ala. 392, 396; *Farrow* v. *Hayes & Co.*, 51 Md. 498, 504, and cases cited; *Winchester* v. *Charter*, 97 Mass. 140; *Potter* v. *McDowell*, 31 Mo. 62, 69; *Gardiner Bank* v. *Wheaton*, 8 Me. 373, 381; *Roberts* v. *Radcliffe*, 35 Kans. 502. But even assuming that, as contended by the defendant, there was no *actual* intent to defraud, that is, no moral turpitude, in the making of said conveyance, but that, at most, he was only guilty of *constructive* fraud, or fraud in law, does that entitle him to the relief here sought? We think not. "A constructive fraud," as defined by Bump on Fraudulent Conveyances, 71, ed. of 1872, "is an act which the law declares to be fraudulent without inquiring into the motive, not because arbitrary rules have been laid down upon this subject, but because certain acts carry in themselves irresistible evidence of fraud." The same author also says, "There is no difference in principle between fraud in fact and fraud in law. Where the direct and inevitable consequence of an act is to delay, hinder or defraud creditors, the presumption at once conclusively arises that such illegal object furnished one of the motives for doing it and it is thus upon this ground held to be fraudulent." See also, Wait on Fraudulent Conveyances, 2d ed. § 9, and cases cited. The reason upon which this rule is founded is manifest. The object sought to be accomplished by the statute against fraudulent conveyances, is to prevent creditors from being defrauded by a wrongful disposition on the part of their debtor, of his property. In other words, it is the accomplishment of a certain result, which the statute is intended to prevent. And, as this result may be accomplished by fraud in law, as well as by fraud in fact, to hold that the former is not equally vicious with the latter, from a legal standpoint, would be to render said statute largely inoperative. For, it can make no difference to a cred-

itor whether his debtor puts his property out of his hands with an *actual* fraudulent intent to hinder and delay him, or does so by a conveyance which, although made in good faith, that is, without in fact intending to defraud, yet must inevitably and necessarily result in defrauding him. In short, the law looks upon fraud in the means, with equal disfavor as upon fraud in the endeavor.

The counsel for the defendant has cited a number of decisions arising under Rev. Stat. U. S. § 5117, which he contends are analogous to the case at bar. Said section provides that "No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy; but the debt may be proved, and the dividend thereon shall be a payment on account of such debt." Said decisions are to the effect that in the said section which sets forth the classes of debts which are exempted from the operation of a discharge in bankruptcy, debts created by "fraud" are associated directly with debts created by "embezzlement," and that "such association justifies if it does not imperatively require, the conclusion that the 'fraud' referred to in that section means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." Such a construction of the statute, says Mr. Justice Harlan, in *Neal* v. *Clark*, 95 U. S. 704, 709, "is consonant with equity, and consistent with the object and intention of Congress in enacting a general law by which the honest citizen may be relieved from the burden of hopeless insolvency." "A different construction would be inconsistent with the liberal spirit which pervades the entire bankrupt system." This decision was affirmed in *Wolf* v. *Stix*, 99 U. S. 1, 6. See also *Hennequin* v. *Clews*, 111 U. S. 676; *Cronin* v. *Cotting*, 104 Mass. 245; *Scott* v. *Porter Bros.*, 93 Pa. St. 39. The statute under consideration in the case at bar, contains no such key to the meaning of the word "fraud," as does that in the section of the bankrupt law, above set out, and

hence it must be presumed that the legislature intended that it should have the legal significance which is ordinarily attached to it, when used in other statutes relating to fraudulent conveyances.

The counsel for the defendant has also referred us to cases in the State of New York, which hold that under the provisions of the fourth subdivision of section 179 of the Code of that State, see Wait's Annotated Code of 1873, the defendant is not liable to arrest except in case of actual fraud.   The said section authorizes an arrest "where," amongst other things, " the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation upon which the action is brought."   But an examination of the entire section referred to, shows, we think, that it was the intention of the legislature in the passage thereof, to restrict the meaning of the word " fraud," as indicated in said decisions, to *actual* fraud. The fifth subdivision of said section, however, is the only one which is analogous to the provision now before us for construction, and that provides that " When the defendant has . . . disposed of his property, or is about to do so, *with intent* to defraud his creditors," he may be arrested, &c.   We think the court might properly hold that under such provision it is necessary to prove actual fraud in order to warrant an arrest.   *Birchell* v. *Strauss*, 8 Abb. Pr. 53; also 28 Barb. S. C. 293; *Claflin* v. *Frank*, 8 Abb. Pr. 412; see *Sherill Roper Air Engine Co.* v. *Harwood*, 30 Hun, 11; *Hathaway* v. *Johnson*, 55 N. Y. 93; *Hoyt* v. *Godfrey*, 88 N. Y. 669. But, however this may be, we do not feel warranted in giving the statute before us, so narrow a construction as that contended for by the defendant.   Its manifest purpose is to prevent debtors, whether solvent or insolvent, from fraudulently putting their property beyond the reach of their creditors, by ordinary process of law, and also to furnish a summary remedy, in case it is done, and it should therefore be construed in furtherance of this purpose.   See *Keene, Petitioner*, 15 R. I. 294.

The final contention of the defendant's counsel is, that the court has a discretionary power under said § 9, to release from arrest, notwithstanding a technical violation thereof by

the defendant has been shown. Said section provides that the court "may . . . for cause shown, . . . release the defendant from arrest and discharge the bail . . . taken thereon." The only discretion conferred upon the court by this provision is, of course, a judicial discretion. The defendant can only be released "*for cause shown.*" This evidently means that he must show that the arrest was illegal. This, he has not only failed to do in the case at bar, but on the contrary has conclusively shown that the arrest was legal. To release him, therefore, would be to practically nullify the provisions of said statute by the exercise of an arbitrary but not a judicial discretion. This we have neither the power nor the inclination to do.

The contention of the plaintiff's counsel that the defendant committed a fraud within the meaning of said § 9, by violating his agreement to notify the plaintiff or his counsel, before making any conveyance of his property, is, of course, wholly untenable.

*Motion dismissed.*

*Jerome J. Hahn & Arthur Cushing*, for plaintiff.
*Stephen A. Cooke & Louis L. Angell*, for defendant.