JOHN DEERE PLOW COMPANY, Appellant, v. SULLIVAN et al.; LANCASTER, Interpleader.

Division One, November 12, 1900.

1. **Attachment: REVERSAL OF VERDICT.** It is only in cases where there is no substantial evidence in the whole case upon which to justify the verdict, or where the jury has been guilty of prejudice, passion or misconduct, or where the verdict is manifestly unjust, that the Supreme Court will review the evidence and set aside the jury's finding of facts in a law case.

2. ———: ———: **INFERABLE FRAUD.** Facts and circumstances that would put a prudent man upon inquiry, which if followed out, would lead to a knowledge of fraud, do not constitute knowledge of the fraud. The rule is that such conditions are evidence from which the jury may infer such knowledge.

Deere Plow Co. v. Sullivan.

3. ——: ——: ——: CASE STATED. The interpleader made out a *prima facie* case. The attaching creditor did not prove a fraud in fact on the interpleader's part, but did prove such facts and circumstances as should have put him on his inquiry, which if followed out would have disclosed the attachment debtor's fraud. *Held*, that this, while constituting evidence from which the jury might infer knowledge of the fraud on the part of the interpleader, did not destroy the interpleader's whole case, nor authorize the trial court to direct a verdict for either party, nor authorize this court to set aside the verdict as to the finding of fact.

4. ——: PURCHASE FROM INSOLVENT DEBTOR. The purchase of property from an insolvent debtor, partly for cash and partly on time, is not *per se* fraudulent in law. That is true only when the purchaser knew of the vendor's insolvency and thereby became a participant in the transaction which had the effect of delaying the vendor's creditors until the maturity of the deferred payments.

5. ——: FRAUD: JURY'S INFERENCE. Although a jury may properly infer that the interpleader had knowledge of the suspicious and fraudulent transaction by which he acquired the insolvent debtor's property in exchange for some worthless notes, yet they are not bound to so infer. Such inference is a question of fact for the jury's finding, and its finding, either way, can not be held an error in law.

6. ——: ——: INSTRUCTION. It is not error to refuse an instruction, correctly worded, as to the interpleader's liability if he had knowledge of the debtor's insolvency at the time he traded with him, if there is no evidence that the interpleader had any such knowledge. There must be evidence on which to base an instruction.

7. ——: ——: INFERENCE: MODIFYING INSTRUCTION. An instruction on the question of the debtor's intention to defraud told the jury that facts coming to the notice of the interpleader which would put a prudent man upon inquiry, and which if followed out would lead to a knowledge of the debtor's fraud "are evidence from which the jury may infer that the interpleader had knowledge of such fact," and these quoted words were changed to read, "which the jury may consider in determining whether the interpleader had knowledge of such facts." *Held*, that the change amounted to only a verbal difference in the expression of the rule.

8. **Argumentative Answer:** SUBSEQUENT CROSS-EXAMINATION. If the statement of a witness amounts to a conclusion of law or fact or an argument to the jury, the error may be eradicated by such cross-examination as sifts out all the facts on which the conclusion is based; and if by taking the whole examination into consideration it is clear that the erroneous answer would not have influenced the verdict, it will not be held to be reversible error.

Appeal from St. Clair Circuit Court.—*Hon. Jas. H. Lay,* Judge.

AFFIRMED.

*John H. Lucas* and *Lathrop, Morrow, Fox & Moore* for appellant.

(1) Upon the entire record the interpleader is not entitled to recover, and the court should have directed a verdict for plaintiff. State ex rel. v. O'Neill, 52 S. W. Rep. 240; State ex rel. v. Merritt, 70 Mo. 283; Reid v. Lloyd, 52 Mo. App. 278. (2) The giving of the note for $2,934, payable in two years, under the circumstances of the case rendered the transaction fraudulent. McDonald v. Hoover, 44 S. W. Rep. 334; Seger v. Thomas, 107 Mo. 635; Ridenour-Baker Gro. Co. v. Monroe, 43 S. W. Rep. 633; Elser v. Graber, 6 S. W. Rep. 560; Oppenheimer v. Guckenheimer, 23 So. Rep. 9; Beals v. Flynn, 44 N. W. Rep. 732; Simon v. Simcox, 75 Mo. App. 147; Roberts v. Radcliff, 35 Kan. 502; Banking House v. Darr, 41 S. W. Rep. 227; Meyberg v. Jacobs, 40 Mo. App. 128; McVeagh v. Baxter, 82 Mo. 518; Buggy Co. v. Ashenfelter, 82 N. W. Rep. 118; State ex rel. v. O'Neill, 52 S. W. Rep. 240; Montgomery v. Bayliss, 11 So. Rep. 198; Am. & Eng. Ency. of Law (2 Ed.), vol. 14, p. 521; Blum v. McBride, 69 Texas 60; Ruhl v. Phillips, 2 Daly 105; Downing v. Kelley, 49 Barb. 547; Warner v. Lake, 14 N. Y. Sup. 10; Nicholson v. Deavitt, 2 Seld. 515; Blackett v.

Harvey, 91 N. Y. 214; Rapley v. Stewart, 27 N. Y. 311; Keyes v. Sanderson, 2 Wis. 42.   (3)   The court erred in refusing instruction 2, requested by the plaintiff, and in modifying it and giving it in a modified form.   National Bank of Commerce v. Brunswick Tobacco Works, 56 S. W. Rep. 283.   (4)   In no event can interpleader recover more than his interest in the property to the extent of the $1,000 paid by him before knowledge of plaintiff's claim.   Arnholt v. Hartwig, 73 Mo. 485; Dougherty v. Cooper, 77 Mo. 528.

*H. H. Blanton* and *Hoss & Scott* for respondents.

(1)   The appellant does not set out the entire record, nor one-tenth part thereof in its abstract, and therefore can not raise the question in this court that the trial court should have directed a verdict for plaintiff, or that there was any fraud committed.   Zweigardt v. Birdseye, 57 Mo. App. 462.   (2)   The questions for determination are, did Sullivan intend at the time he sold the goods to Lancaster, to hinder or delay or cheat or defraud his creditors, and did Lancaster at the time of the purchase, have knowledge of such fraudulent intention on Sullivan's part?   Hill v. Taylor, 125 Mo. 342; Dougherty v. Cooper, 77 Mo. 528; Garesche v. McDonald, 103 Mo. 1; Shelley v. Boothe, 73 Mo. 74; Frederick v. Allgaier, 88 Mo. 601; Sexton v. Anderson, 95 Mo. 379.   (3)   Instruction 1 was properly refused.   The doctrines enunciated in that instruction are not applicable to the facts of this case.   A debtor in failing circumstances has a right to dispose of his property in order to obtain money for the purpose of paying his debts, even though the sale may hinder or delay his creditors, if the sale is made with an honest purpose, and for this purpose he may sell for cash or on time.   State ex rel. v. Purcell, 131 Mo. 318; Dougherty v. Cooper, 77 Mo. 531; Baker v. Harvey, 133 Mo. 661;

Hickey v. Ryan, 15 Mo. 62; Buckner v. Stine, 48 Mo. 407; Green v. Tanner, 8 Met. 411; State ex rel. Pierce v. Merritt, 70 Mo. 275; Murray v. Cason, 15 Mo. 379; Waddams v. Humphrey, 22 Ill. 661; Nelson v. Smith, 28 Ill. 492; Gens & Tiede v. Hargadine, McKittrick & Company, 56 Mo. App. 245.

MARSHALL, J.—The defendant Sullivan, and C. M. Kee, as partners, in and prior to the early part of July, 1893, were engaged in the hardware business in Nevada, Missouri. Kee sold out to Sullivan for three thousand dollars, of which twenty-five hundred dollars remained due Kee in July, 1895. In July, 1895, the assets consisted of a stock of goods, worth about forty-five hundred to five thousand dollars, and some seven thousand dollars in notes and accounts. Sullivan and Kee owed the plaintiff herein twenty-two promissory notes, aggregating $2,557.49, which were payable on the first of each month, beginning October 1, 1895. Prior to July 27, 1895, negotiations were begun between Sullivan and the interpleader Lancaster, who were life long friends and distantly related by marriage, looking towards a sale of the stock of goods by Sullivan to Lancaster. The latter was a farmer and school teacher and had no knowledge of or experience in the hardware business. Sullivan represented to Lancaster that the stock was worth five thousand dollars, and that he owed Kee twenty-five hundred dollars, and that Kee was pressing him for the money and was willing to take two thousand dollars for his claim, and that he, Sullivan, wanted to sell his stock so as to get money to pay Kee, and would give him, Lancaster, the benefit of the Kee reduction of five hundred dollars, by selling him, Lancaster, the stock for forty-five hundred dollars. The bargain was struck, and without taking stock or an inventory or making any inquiries in the matter, Lancaster took possession of the goods on July

27, 1895, and gave Sullivan $1,000 in cash and his note for $2,934 payable at two years after date, with six per cent interest, and assumed the payment of $500 that Sullivan owed Hibbard, Spencer, Bartlett & Co., and $66 that Sullivan owed the Favorite Stove and Range Co. Sullivan turned over the $1,000 to Kee and gave him also some $700 of the notes and accounts Sullivan so held, and $300 worth of stoves, which with the note for $2,934 aggregated the agreed price of $4,500. Sullivan also owed the Supplee Hardware Co. two hundred and two dollars, and on the thirty-first of July Lancaster agreed to assume that debt and that amount was credited as a part payment on Lancaster's note for $2,934 aforesaid. Several days after the sale to Lancaster, Kee informed him of Sullivan's debt to the plaintiff, and about the same time two representatives of the plaintiff went to Nevada and talked with Sullivan and Lancaster about it. Sullivan offered to turn over to them some of the notes which he held, but the evidence is conflicting as to whether the Lancaster note was to be included therein. It is morally certain that it was not for the reason that that note alone exceeded in amount the sum of the notes due the plaintiff. At any rate no agreement was reached. Thereafter on the 6th of August, 1895, the plaintiff instituted this suit, by attachment, against Sullivan, and obtained a restraining order preventing Sullivan from disposing of the Lancaster note for $2,934. Sullivan was then out of town. He returned on August 7th and was informed by a friend of the suit. He went to the court house to verify the information, and becoming satisfied that such was the case and that the purpose of the suit must be to prevent his collecting or negotiating the Lancaster note, in order to prevent such a happening, he went, immediately, and before being served with process in the case, to Lancaster's store and told him to go to an attorney's office where he, Sullivan, would shortly meet

him.   Lancaster did so, and they met there.   Sullivan said to Lancaster: "Bob, I would like to swap your paper for the paper you hold," meaning notes of Lancaster's brother-in-law and his brothers, that Lancaster held.   Sullivan gave no reason for his desire to swap and Lancaster made no inquiries.   Lancaster knew nothing at that time of this suit. Lancaster agreed to the swap and accordingly Sullivan gave Lancaster his note for $2,934, on which there was a credit of $202, leaving a balance due of $2,732, and Lancaster turned over to Sullivan the notes he held against his brother-in-law and his brothers, which aggregated $2,534.45, and to cover the difference between this sum and the $2,732, Lancaster gave Sullivan his check for $197, which was paid.   On the 12th of August the plaintiff took the depositions of Sullivan and Lancaster and thereafter on the 28th of September, 1895, the plaintiff caused the attachment writ to be levied on the stock of goods in Lancaster's possession and had them sold.   Lancaster interpleaded, claiming to be the owner of the goods.   The answer of the plaintiff to Lancaster's interplea is a general denial, that the plaintiff is the owner of the goods, and that they were worth forty-eight hundred dollars. The cause was taken by plaintiff by change of venue to St. Clair county.   A trial was had resulting in a verdict and judgment for the interpleader and after proper steps the plaintiffs appealed to this court.

I.

The plaintiff insists that "upon the entire record the interpleader is not entitled to recover, and the court should have directed a verdict for plaintiff."

It is not the practice of this court, in actions at law, to review conflicting evidence or to interfere with verdicts of juries where there is any substantial evidence to support

them. It is only in cases where there is no such substantial evidence in the whole case upon which to justify the verdict, or where the jury has been guilty of prejudice, passion or misconduct, or where the verdict is manifestly unjust that this court will review the evidence and set aside the findings of fact. It is not enough that there is a mere insufficiency of evidence, nor that upon the evidence adduced this court would, if sitting as the trier of the facts, have reached a different conclusion from that arrived at by the jury. [James v. Ins. Co., 148 Mo. l. c. 15 and 16.]

If Lancaster and his witnesses told the truth there can be no doubt that he made out a prima facie case upon the facts and that he did not know of or participate in any fraud Sullivan may have intended or committed. The plaintiff's testimony, outside of that of R. N. Sullivan, who testified on December 21, 1895, that there was no fraud intended or committed, and on December 7, 1896, that it was a mere scheme concocted by Sullivan and Lancaster to defraud Sullivan's creditors, simply tends to establish that the sale was *bona fide* in fact, so far as Lancaster was concerned, when it was consummated, and that he neither knew of or participated in or was put to notice of or inquiry about any fraudulent purpose, until the 7th of August, when Sullivan proposed the exchange of notes evidencing the deferred payment, and the evidence in this respect does not even tend to show that he even then knew of any fraudulent intent by Sullivan, but it is contended by plaintiff that such a proposition from Sullivan to take the notes of his brother-in-law and his brothers, who were insolvent, in substitution for his note, was a fact so pregnant with fraud that he was put to inquiry, which if followed would lead to a knowledge of the truth and hence he must be conclusively treated as having knowledge of the fraud from that time, and therefore his participation in the fraud must be related back to the inception

thereof or else he is only protected to the extent of recovering the amount of money he actually parted with before being so put to inquiry.

The infirmity in this contention lies in the error that facts and circumstances which would put a prudent man upon inquiry, which, if followed out, would lead to a knowledge of fraud, constitutes knowledge of the fraud. The rule of law is that such conditions are evidence from which the jury may infer such knowledge. This is as far as the rule extends in this State. [State ex rel. v. Purcell, 131 Mo. l. c. 317; Bank v. Tobacco Works, 155 Mo. 602.]

The cause was thus left in this shape: the interpleader made out a prima facie case; the plaintiff did not prove a fraud in fact on Lancaster's part, but did prove facts and circumstances such as should have put him on inquiry, which if followed out would have disclosed Sullivan's fraud, and this, while not constituting knowledge of fraud in Lancaster, was evidence from which the jury might infer such knowledge.

In other words the extent of the plaintiff's showing simply warranted the jury in finding that the interpleader's prima facie case had been overcome—it did not destroy the interpleader's whole case, nor conceding all the interpleader had proved effectually avoid it.

The result, of course, is that this case does not fall within the rule under which a trial court would be authorized to direct a verdict for either party nor under which this court will review and set aside the verdict of a jury as to the finding of fact.

## II.

It is next claimed that "the giving of the note for $2,934, payable in two years, under the circumstances of the case, rendered the transaction fraudulent."

Deere Plow Co. v. Sullivan.

The question, therefore, is, does the purchase of property from an insolvent debtor, partly for cash and partly on time, necessarily render the transaction fraudulent in law as to the purchaser, under all circumstances?

The rule is thus stated in 14 Am. and Eng. Ency. of Law (2 Ed.), p. 521: "A sale of goods by an insolvent debtor upon long and unusual credit is a badge of fraud; and when the postponement of payment is for an indefinite time, or for a number of years, the intent to hinder and delay creditors is so manifest as to make the badge conclusive."

It has also been held that where a creditor takes from a known insolvent debtor substantially all his property, which is largely in excess of the amount of his claim, and executes to the debtor his note payable (in most of the cases decided) at one year after date, such a transaction is fraudulent, for it necessarily hinders and delays the other creditors of the vendor, by withdrawing the excess from immediate sequestration by judicial process and by postponing the collection of their debts, without their consent, for the time specified in the note. [Seger v. Thomas, 107 Mo. 635; Elser v. Graber, 6 S. W. Rep. 560; Oppenheimer v. Guckenheimer, 23 So. Rep. 9; Simon v. Simcox, 75 Mo. App. l. c. 147; Roberts v. Radcliff, 35 Kan. 502; Montgomery v. Bayliss, 11 So. Rep. 198.]

The rule has also been announced that if the creditor knows of the debtor's insolvency and takes more than reasonably enough to pay or secure his debt and pays cash for the excess, the transaction is fraudulent in law and the purchaser is a participant in the fraud. [McVeagh v. Baxter, 82 Mo. 518; Buggy Co. v. Ashenfelter, 82 N. W. Rep. 118.]

The principles declared by these cases are not questioned here. It is their applicability to the facts of this case that is denied. Here, Lancaster was not a creditor of Sullivan.

Vol. 158 mo—29

It is not pretended that Lancaster knew, at, or before, the time he purchased the stock of goods that Sullivan was insolvent. There is evidence on the part of the interpleader tending to prove that he believed the stock of goods was worth from $4,500 to $5,000; that he took steps to ascertain how much Sullivan owed and learned only of the $2,500 (adjusted at $2,000) which he owed Kee, the $500 he owed Hibbard, Spencer, Bartlett & Co., and the $66 he owed the Favorite Stove & Range Co., and that he knew that the $1,000 cash which he paid Sullivan was intended, and actually used, to pay Kee, and that the balance was paid him by giving him $700 in notes and accounts which Sullivan held against other persons and by turning over to him three hundred dollars worth of goods, and he assumed the payment of the five hundred dollar debt and the sixty-six dollar debt as a part of the purchase price of $4,500, and in fact, before the levy of the attachment he paid Hibbard & Co. $366.24 on account of their five hundred dollar debt, and the Favorite Stove & Range Co. $59.75 on account of their sixty-six dollar claim. When Lancaster learned, after the sale, of the debt to the Supplee Hardware Co. of $202, he assumed that also, and before the levy of the attachment he paid $75 on account thereof. It is also an uncontradicted fact in the case that from July 26th, when he bought the stock, until September 28th, when the plaintiff levied on it, Lancaster had drawn out from the business for his own use only the paltry sum of one dollar, and had added about a thousand dollars worth of new goods to the stock, which was also taken and sold under the attachment. Lancaster never heard of the debt to the plaintiff until several days after his purchase of the stock, when Kee (who was jointly liable therefor with Sullivan) told him. Kee knew about it all the time, but he waited until he got the $1,000 which Sullivan got from Lancaster and secured the whole of his interest in the partnership's

assets, before he told Lancaster anything about it.    It is not pretended that when Lancaster exchanged the notes with Sullivan he knew anything about the attachment suit against Sullivan and it is admitted that he learned that fact after the exchange was made.    But the plaintiff's whole contention is that the fact that Sullivan was willing to give Lancaster his note and to take the notes of Lancaster's brother and brothers-in-law (and the $197.55 difference in cash) was a fact or circumstance so pregnant with suspicion that Lancaster was put to inquiry, and whether he made inquiry or not, the transaction is fraudulent in law, especially as Lancaster then knew of Sullivan's debt to the plaintiff and should have known, or by inquiry could have ascertained, that plaintiff had sued Sullivan and that Sullivan's purpose in desiring the exchange of the notes was to defraud plaintiff.    If all these things be conceded they do not amount to fraud in law, but as hereinbefore pointed out they simply authorized the jury to infer from them that Lancaster had knowledge, or in other words were evidence from which an inference of knowledge in fact might be drawn and were not knowledge itself, and the jury did not so infer in this case.

It follows therefore that the rule announced by the cases cited is not broad enough to justify a holding that a purchase of property, partly for cash or partly on time, is *per se* fraudulent in law, for such a condemnation follows only when the purchaser knew of the vendor's insolvency and thereby became a participant in the transaction which had the effect of delaying the vendor's creditors in the collection of their debts until the maturity of the deferred payments.    The transaction would be equally as fraudulent in law when the whole purchase price was paid in cash if the vendee knew of the insolvency of the vendor and of his intention not to apply the money received from the sale to the payment of the debts.

But these principles do not apply to the facts in this case. The *jus disponendi* permits a sale of property either wholly for cash or partly for cash and part on time or wholly on time. If the vendor is insolvent his *jus disponendi* is qualified first, by the honesty of his purpose in selling, and second, by the terms of sale, by which is meant that the effect of such terms shall not withdraw his property from the right of his creditors to immediately sequester it by judicial process. A vendee, in good faith and without notice of the insolvency or fraudulent purpose of the vendor, has a right to buy his property for cash or on time, but if he does not act in good faith or has notice of the vendor's insolvency or fraudulent purpose he is not protected in his purchase whether it be for cash or on time.

"Under the circumstances of this case," it can not be said that Lancaster knew of Sullivan's insolvency or of his purpose to delay his creditors until the maturity of the deferred payments, but on the contrary he honestly believed Sullivan wanted to get money to pay Kee, that the money he, Lancaster, paid was so applied, and that he, Lancaster, assumed the payment of all the debts he was advised that Sullivan owed, and since the purchase he has actually paid the bulk thereof. The exchange of the notes is therefore the only circumstance remaining to be noticed. It is not claimed that Lancaster even then knew Sullivan was insolvent, nor of the suit, nor of Sullivan's purpose.

That transaction did not delay Sullivan's creditors, for the notes he then gave Sullivan were all due, while Lancaster's would not fall due for nearly two years. This boils the matter down to this: it is claimed that the makers of those notes were insolvent and hence the transaction was so suspicious that Lancaster was put to inquiry as to why Sullivan wanted to make the exchange, albeit he was still innocent of knowledge or fraudulent participation. This may be

conceded, and it may be also conceded that the jury would have been warranted in inferring knowledge from this circumstance. But the jury were not bound to so infer and did not do so. This then became a question of fact for the jury to find, and their finding, either way, can not be declared an error in law. The judgment can not be disturbed on this ground.

## III.

The plaintiff asked the court to instruct the jury as follows:

"If the jury believe from the evidence that Sullivan was insolvent, and that Lancaster knew that Sullivan was insolvent, and with such knowledge, gave to Sullivan the note for $2,934, payable on or before two years after date, as a part consideration of the purchase, then the sale of the stock of goods to interpleader, was fraudulent in law, and your verdict will be for plaintiff on the interplea."

The court refused to so instruct the jury, and this is assigned as error.

From what has been already said herein, it is plain that this instruction states the general proposition of law correctly, and if there had been any substantial evidence upon which to predicate a finding that Lancaster knew that Sullivan was insolvent, it would have been error to refuse the instruction. But there is no such evidence in this record, but on the contrary, as already pointed out, Lancaster tried to find out how much Sullivan owed, assumed the payment of all the remaining debts he was advised that Sullivan owed, and Sullivan's assets then exceeded all that Lancaster knew Sullivan owed by the amount of the note of $2,934. So this instruction was properly refused.

## IV.

The plaintiff asked the court to instruct the jury as follows:

"In determining whether the interpleader knew of Sullivan's intention to defraud, if there was such intention, the jury are instructed that it is not incumbent on the plaintiff to prove such knowledge by positive testimony, but that facts coming to the notice of the interpleader which would put a prudent man upon inquiry, and which if followed out would lead to a knowledge of the fraud on the part of Sullivan, are evidences from which the jury may infer that Lancaster had knowledge of such fraud."

The court modified the instruction by striking out the words "from which the jury may infer that Lancaster had knowledge of such fraud," and by inserting in lieu thereof the words, "which the jury may consider in determining whether Lancaster had knowledge of such fraud."

The instruction as asked expresses correctly the rule of law in this State. [State ex rel. v. Purcell, 131 Mo. 1. c. 317; Bank v. Tobacco Works, 155 Mo. 602.] The modification made by the court amounts to only a verbal difference in the expression of the rule. The jury would get the same idea from both. In fact even to the trained legal mind the difference in meaning and effect is more refined than substantial. If such facts and circumstances do not amount to knowledge but are only evidences from which, in the discretion of the jury, knowledge may or may not be inferred, then they do not amount to facts, for if they were facts the jury could not legally disregard them. If they are not facts but only evidence from which the existence of the material fact may or may not be inferred, then the difference between the privilege of inference and of considering them in determining the existence or non-existence of the material fact neces-

sary to be decided is a metaphysical rather than a practical difference.   The jury in this case could not possibly have been misled by the modification of the instruction asked, and therefore the judgment should not be set aside for this reason.

## V.

On the trial of the case Mr. H. H. Blanton, one of the attorneys for the interpleader, was called as a witness in rebuttal to contradict statements made by R. N. Sullivan in his deposition of December 7, 1896, wherein said Sullivan testified that Blanton told him that "things could be fixed all right, so that something could be saved out of the business," and that the sale from Sullivan to Lancaster was only a "blind" to beat Sullivan's creditors so that they both could make something out of it.   During the course of his examination Mr. Blanton was asked:   "Did you know at that time or have you ever known anything relating to this transaction which sought to cover up the indebtedness of Sullivan or anything that tended to hinder and delay or defraud any of his creditors?"   The plaintiff objected to the question as calling for a conclusion of the witness.   The court overruled the objection and the plaintiff preserved its exception.   The witness then answered:   "I never heard of anything of that character, and know as a fact that Lancaster was innocent of any intention of wrong doing or of harming any creditor of Mr. Sullivan's or any one else."   The plaintiff then asked the court to strike out the answer of the witness "as an argument to the jury, not a statement of fact."   The court refused to do so and plaintiff excepted.   This is now relied upon as reversible error in the case.   If this question and answer stood alone there would be no doubt about the impropriety of the ruling of the court in not striking out all of the answer except the words, "I never heard of anything of that character."

But the record discloses the facts to be that although Mr. Blanton was called for the interpleader in rebuttal to contradict the statements of R. N. Sullivan, he was examined in chief and cross-examined, at length and in detail, by both parties as to every fact in connection with the sale from Sullivan to Lancaster from the incipiency of the negotiations to the close of the deal, and neither side interposed any objection to this method of procedure but treated the witness as entitled to give his version of the whole transaction, and did not make the point that he was only entitled to rebut R. N. Sullivan's testimony. So the witness minutely detailed every fact and circumstance that was known to him and disclaimed any knowledge of any other fact. The question and answer here objected to was thrown in near the close of his examination in chief as a sort of an "omnium gatherum," and afterwards on cross-examination the witness specified every fact he knew or did not know about the case, so that the sting of the answer in question was taken away by the subsequent cross-examination by the plaintiff. In other words the plaintiff did not stand on the error, but by its subsequent conduct sifted the wheat of truth from the chaff of conclusion, so far as this witness was concerned. Under these circumstances it is impossible to conclude that the jury failed to understand what facts Mr. Blanton knew and what he did not know about the transaction or that this question and answer influenced the jury in reaching their verdict in this case.

Under these conditions the error is not a reversible error. [Section 865, Revised Statutes 1899; Griffith v. Railroad, 98 Mo. l. c. 175; Gardner v. Railroad, 135 Mo. l. c. 100; Water Co. v. City of Lamar, 140 Mo. l. c. 158.]

The judgment of the circuit court is therefore affirmed. All concur.