Barrett v. Davis.

BARRETT *et al.*, *Appellants*, v. DAVIS *et al.*

IN BANC.

1.  **Deed:** ACKNOWLEDGMENT, IMPEACHMENT OF. In Missouri, a certificate of acknowledgment of a conveyance of land may be avoided by evidence of its falsity; but there should be a clear preponderance of evidence to warrant such a finding.

2.  **Married Woman:** SEPARATE ESTATE: SURETYSHIP. Where the separate estate of a wife is mortgaged to secure her husband's note, her estate stands in the relation of surety to that debt.

3.  **Surety:** EXTENSION OF TIME TO DEBTOR: RELEASE OF DEBT. A contract between debtor and creditor for an extension of time of payment for any definite period, without consent of the surety, discharges the latter.

4.  ——— : ——— : CONSENT OF SURETY. Where such agreement is made upon condition that the surety assents thereto, it does not discharge the latter.

5.  ——— : ——— : ———. Such condition may be verbal and collateral to a written agreement.

6.  **Written, Contract:** EVIDENCE. Facts showing that a writing never acquired original vitality as a contract are admissible in evidence.

7.  **Married Woman:** SEPARATE ESTATE: SURETYSHIP: EXTENSION OF TIME TO DEBTOR. A married woman, as to her separate estate, is, in equity, held competent to consent to an extension of a debt for which her estate stands as surety, or to ratify such an extension as indicated below.

8.  **Notice:** FACTS PUTTING ONE ON INQUIRY. Facts and circumstances which would naturally put a person of ordinary caution on an inquiry, reasonably leading to knowledge of the truth, are evidence from which that knowledge may be found.

9.  **Principal and Agents:** ACQUIESCENCE IN ACTS OF AGENT. A principal's long acquiescence ( here, four and a half years ) in, and enjoyment of the fruits of, a transaction had on her behalf, by an agent with assumed authority, *held* a ratification of the transaction.

10. **Practice in Supreme Court in Equity Cases:** ERRONEOUS EVIDENCE. In suits in equity the supreme court, on appeal, may discard evidence erroneously admitted in the trial court, without remanding for a new trial.

104  549
126   16

104  549
131  318

104  549
132 ·610
66a 413

104  549
151   21
80a 666

104  549
155  609

104  549
84a 168

104  549
89a 550

104    549
174  ³206

104    549
179  ¹392

*Appeal from Johnson Circuit Court.*—HON. CHARLES
W. SLOAN, Judge.

AFFIRMED.

PLAINTIFFS are husband and wife.   The purpose of
their present suit is to set aside a deed of trust in the
nature of a mortgage, made in 1882, conveying Mrs.
Barrett's land (her sole and separate property in
equity), to secure a note of Mr. Barrett for $3,000 and
interest.

The defendants are the holders of the note secured
and the trustee (with power of sale), named in the deed
of trust.

The petition alleges two grounds or causes of action.
By the first it is asserted, in substance, that the incum-
brance is not binding on Mrs. Barrett for two reasons,
*first*, because of a false certificate of acknowledgment
by the notary, it being claimed by plaintiffs that she
was not examined separate and apart from her husband
and did not acknowledge that she executed the instru-
ment freely, etc.; and, *secondly*, because of a forgery in
the insertion of a description of twenty acres of other land
than that originally described when the deed was deliv-
ered.

The second cause of action proceeds on the theory
that Mrs. Barrett occupied the attitude of a surety
toward the debt secured by the deed of trust, and that
the creditor released her and her land in consequence
of a valid agreement by him with Mr. Barrett to extend
the time for payment of his said debt, without her con-
sent.

The answer, in substance, denies the facts alleged
in the first count; and, as to the second, asserts the full
knowledge and consent of Mrs. Barrett to the extension
of time mentioned, and states the circumstances thereof.

The new matter was put in issue by a reply.   A
trial followed, resulting in a finding and decree for

defendants. After the usual motions and other formal steps, plaintiffs appealed.

The agreement for the extension of time, mentioned in the opinion of the court, is as follows:

" This memoranda of agreement made and entered into by and between Charles H. Peck and E. P. Barrett witnesseth: That it is in consideration of the premises agreed that Charles H. Peck will take up a certain note of $3,000, dated February 23, 1882, formerly held by him, and will grant an extension thereon to said Barrett of time of payment of one year, and said Peck agrees to forbear the enforcement of the deed of trust and payment of said note for one year from February 23, 1883 ; and in consideration thereof the said Barrett agrees to cause to be dismissed a suit now pending in the circuit court of Johnson county, Missouri, entitled Edwin P. Barrett *et al. v.* Geo. J. Davis *et al.*, and to pay the costs thereon amounting to $66.10. And it is agreed that Frank J. Bowman may and shall pay and cause to be paid such moneys as may come into his hands from D. C. Thatcher and Charles P. Chouteau belonging to said Barrett, to said Charles H. Peck to be applied upon said note until the same is fully paid. Witness our hands this thirty-first day of May, 1883.

"CHARLES H. PECK.
"E. P. BARRETT.

" I assent to the within for Mrs. Susan P. Barrett.
"S. P. SPARKS, Her Attorney.

" I agree to the terms of the within as far as I am concerned therein.          FRANK J. BOWMAN."

The other facts essential to an understanding of the case appear in the opinion.

*S. P. Sparks* and *A. B. Logan* for appellants.

(1) The deed of trust possessed no validity for the reason that the statute was not complied with in taking the acknowledgment of Mrs. Barrett. *Belo v. Mayes*,

79 Mo. 67; *Wannell v. Kem*, 57 Mo. 480; *Steffen v. Bauer*, 70 Mo. 399; *Sharpe v. McPike*, 63 Mo. 300; *Clarke v. Edwards*, 75 Mo. 87. The finding of the court on that issue raised by the first count in the petition was clearly against the weight of the evidence. This being a cause of equitable cognizance, the court will examine the testimony to ascertain that fact. (2) Where the wife mortgages her real estate to secure the debt of the · husband she occupies the relation of surety to him and can avail herself of all the beneficial rights and remedies as any other surety. *Wilcox v. Todd*, 64 Mo. 388. (3) An extension of time of payment of a debt to a principal without the consent of the surety discharges the obligation of the surety. *Ins. Co. v. Houck*, 83 Mo. 21; *Ins. Co. v. Houck*, 71 Mo. 128. *First*. There is not a scintilla of evidence in this record tending to show knowledge, much less consent, of Mrs. Barrett, to support the burden resting upon defendants under their plea of ratification. *Second*. In this extremity they are driven to rely solely upon the authority of Sparks as her attorney to bind her to the extension. (4) An attorney employed in the usual way to conduct a suit has in general no authority to enter into a compromise without the sanction, expressed or implied, of his client. *Webb v. Grumley*, 48 Mo. 562; *Walden v. Bolton*, 55 Mo. 405; *Spears v. Ledergerber*, 56 Mo. 465; *Semple v. Atkinson*, 64 Mo. 504; *Roberts v. Nelson*, 22 Mo. App. 28; *Melcher v. Bank*, 85 Mo. 362; *Bradley v. Welch*, 100 Mo. 258; *Halker v. Parker*, 7 Cranch, 436; *Vanderline v. Smith*, 18 Mo. App. 55; see note to Mechem on Agency, secs. 809, 810. *First*. The presumptive authority of an attorney is not conclusive, but may be rebutted. Mechem on Agency, secs. 809, 810. *Second*. An attorney by virtue of his general employment in a cause has no authority to agree to an extension of time upon a demand. *Lockhart v. Wyatt*, 10 Ala. 231. (5) The plea of ratification was not made out by the defendants; it must be made with full

knowledge of the transaction. It is the predicate of knowledge and acquiescence. The law will not presume a ratification by the principal of the unauthorized acts of his agent. *Express Co. v. Reno*, 48 Mo. 264. (6) The court erred in allowing in evidence the insurance policy on the property taken out by her husband and, without her knowledge and consent, assigned as security to defendant Peck, in the face of the testimony of F. B. Hawes, agent, that it was done without her knowledge or consent; it was *res inter alios acta*. The acts of Sparks, her attorney, in subsequently dismissing the suit, having been done without her knowledge or consent, did not show, nor tend to show, the ratification on her part of his act outside of the case in agreeing to the extension of time. (7) The court erred in permitting the attorney, Geo. J. Davis, to detail confidential and privileged communications between himself and his client, E. P. Barrett, without Barrett's consent, and against the objection of plaintiff and E. P. Barrett. Leading art., 28 Cent. Law Jour. p. 539; leading art., 28 Am. Law Reg., Jan. 1889; 1 Thomp. Trials, secs. 295–297, 298–300; *Wilson v. Godlove*, 34 Mo. 337; *Johnson v. Sullivan*, 23 Mo. 470; *Gray v. Fox*, 43 Mo. 570; *Davis v. Kline*, 76 Mo. 410; R. S. 1879, sec. 4017; *Cross v. Riggins*, 50 Mo. 335. Davis' testimony was upon vital points in the case; for this error alone the decree should be reversed. (8) The court erred in permitting evidence tending to establish that a portion of the money furnished by Peck to Barrett was used to pay off a prior incumbrance on the premises. There was no issue to which it was relevant. The defendant in his answer did not seek to be subrogated to any rights by reason of such application, and could not have been had he sought it. *Price v. Courtney*, 87 Mo. 387; *Wooldridge v. Scott*, 69 Mo. 669. Especially was this evidence illegal, irrelevant, incompetent and prejudicial to plaintiff in the face of the other testimony showing that the debt which that incumbrance secured

was that of her husband, E. P. Barrett, constituting her his surety, merely. (9) The finding and decree is without any support whatever in the evidence. The extension of time was such as to release her as surety, and it devolved on defendants on this state of facts to establish by some unequivocal act that Mrs. Barrett had ratified the unauthorized act of her attorney, Sparks.

*J. W. Suddath* and *O. L. Houts* for respondents.

The evidence shows without substantial conflict that plaintiff Susan P. Barrett had actual knowledge of the agreement of May 31, 1882, of extending the time of payment of the note, and, as a party thereto, assented, and is bound by it. The trial court so found, and this court will defer somewhat to that finding. Her attorney had the right to consent to the agreement for her. *Davis v. Hall*, 90 Mo. 659 ; *Semple v. Atkinson*, 64 Mo. 504; *Black v. Rogers*, 75 Mo. 441; *Holker v. Parker*, 7 Cranch, 436; Weeks on Attorneys, sec. 330 ; Wharton on Agency, sec. 590, *et seq.* (2) With knowledge of the material facts, and with means of knowledge of all the facts, she permitted defendant Peck, relying on her action, to comply with the agreement in his part, complied on her own part and she is now estopped from denying her assent and repudiating the agreement to his injury. *Seimers v. Kleeburg*, 56 Mo. 196 ; *McQuie v. Peay*, 58 Mo. 56; *Hord v. Taubman*, 79 Mo. 101 ; *Turner v. Shaw*, 96 Mo. 22. (3) To release the deed of trust executed by Mrs. Barrett to secure the payment of the note of her husband, a valid contract must have been made, founded upon a sufficient consideration, extending the time of payment of the note for a definite time without her knowledge or consent. *Ins. Co. v. Houck*, 83 Mo. 21. (4) The testimony of the notary, W. C. Taylor, justified the finding of the court that the deed was properly acknowledged by Mrs. Barrett. Her own

testimony left no doubt about it. She said she read it and made herself perfectly acquainted with its contents; that the notary asked her if she had done so and she told him she had. *Drew v. Arnold*, 85 Mo. 128. (5) It was as good as an equitable mortgage on her separate estate if not acknowledged by her, and cannot, therefore, be set aside. There was no alteration or change of the deed after its execution. The evidence would justify no other conclusion. This contention is abandoned by plaintiffs in their brief. (6) There was no error in admitting the testimony of Geo. J. Davis. This testimony stands uncontradicted that he was not attorney for either party at the time he drew the deed. He was simply employed by them to draw the deed, and communications to him were not privileged. *House v. House*, 61 Mich. 69; *Ins. Co. v. Reynolds*, 36 Mich. 502; 1 Am. St. Rep. 570.

BARCLAY, J.—This being a cause of equitable cognizance, it has been necessary to review the facts disclosed by the record of the trial.

I. As to the first count there was some evidence, chiefly by Mrs. Barrett, tending to contradict the essential facts recited in the certificate of acknowledgment. On the other hand, the notary gave a circumstantial and clear account of the transaction just as he described it officially.

In our state, in view of the obvious meaning of the statute on this subject, the courts have felt constrained to hold that such certificates may be avoided by evidence *aliunde* showing their falsity. *Mays v. Pryce* (1888), 95 Mo. 603; *Pierce v. Georger* (1891), 103 Mo. 540; 15 S. W. Rep. 849. That construction has been too long accepted as settled law to require re-examination now. But, in applying it, in view of the recognized presumption of correctness attaching to the acts of public officials, we are of opinion that there should be a clear and decided preponderance of evidence to warrant discarding as

false any such certificate. Without reviewing the evidence in detail, it is enough to say that we find no such preponderance here.

We find equally untenable the position of plaintiffs in regard to the alleged interpolation in the instrument (after its delivery) of a description of twenty acres of land, additional to that admittedly inserted therein.

It was conceded by plaintiffs at the trial, that, on the face of the deed of trust, no trace appeared of any erasure or interpolation. It further was shown that the deed was written in St. Louis, by an attorney unacquainted with the locality of the land (Johnson county), who was furnished the description by Mr. Barrett at the time the latter made the loan. Mr. Barrett testified that the description of the twenty acres was not in the deed when it was read to him, and that the only land agreed to be incumbered was his wife's homestead in West Holden, Missouri. The draftsman of the deed and another witness (not a party to this litigation) testified that it was first written as it now reads. The circumstances of the making of the loan were stated, and, from all the evidence to this point, it seems to us clear, that there has been no change in the instrument since its execution. On both of the foregoing points we perceive no ground to reverse the finding of the trial court in favor of defendants.

II. As to the second count, it may now be assumed as settled law that the attitude of Mrs. Barrett toward the debt of her husband, secured by the incumbrance on her sole and separate estate, was that of a surety. It may likewise be assumed that Mr. Peck was the creditor when the writing of May 31, 1883, was executed, though, according to the recitals in it, his position was somewhat different. He had been the original lender of the funds on the note of Mr. Barrett, secured as stated, but had transferred the paper to other hands. On the date last named, the note was overdue and the

land had been advertised for sale to satisfy the debt. January 26, 1883, the present plaintiffs had brought a suit in equity, which was then pending in the Johnson county circuit court against the same defendants as now, to set aside the incumbrance in question on grounds substantially identical with those appearing in the first part of their petition in this .case. Their bill was resisted, and the cause was triable the second Monday of June ensuing, 1883.

In this situation of affairs, Messrs. Peck, Barrett, Bowman and Sparks met in St. Louis, May 31, 1883, and the writing, recited fully in the accompanying statement, was signed. Mr. Bowman was then the attorney of Mr. Barrett in litigation between the latter and Messrs. Chouteau and Thatcher. Mr. Sparks was the attorney of Mr. and Mrs. Barrett in the suit to set aside the deed of trust in Johnson county. The accounts of the execution of the writing in question are somewhat at variance, but it will not be necessary to enter into the details of the differences between the witnesses. It is sufficient to note the salient parts of the testimony as we interpret it.

The writing was the outgrowth of negotiations between Messrs. Peck and Barrett, the object of which, on the part of the former, evidently was to remove the litigation and question affecting and impairing the mortgage security, and, on the part of Mr. Barrett, to avert a sale of his wife's realty and obtain time to pay his debt.

Mr. Peck testified at the trial of this cause that Mr. Barrett applied to him, requesting this adjustment, said he would pay the costs of the suit then pending, and that, "with the understanding that Mrs. Barrett was to assent to it, I told him that I would take the note up and hold it," and, "in pursuance of that, this paper was shaped up; Mr. Sparks was sent for, and my understanding was that Mr. Sparks came there as Mrs. Barrett's attorney." Mr. Peck further stated that the

writing was executed in duplicate (as it now appears) at about the same time, one evening. Messrs. Barrett and Peck each retained one of the originals, and each was produced at the trial.

Mr. Sparks testified that he had no authority to assent on behalf of Mrs. Barrett, and that he so stated before he signed the paper. This statement Mr. Peck denies, adding that, if it had been made, he would not have entered into the arrangement. Mr. Barrett was recalled as a witness after Mr. Peck had testified as indicated, but gave no version of that part of the interview which formed the point of difference last above noted.

Applying the law to these facts, we recognize the full force of the rule which discharges a surety where the creditor makes a contract with the debtor for an extension of time, whereby the former's right to enforce an existing liability is stayed for any definite period, without the consent of the surety. One of the reasons of this rule is found in equitable considerations, growing out of the surety's right to be subrogated to the creditor's, at any moment, by payment of the debt to the latter.

But the rule itself is now too universally acknowledged to require argument to sustain it. We refer to its reason merely to add that the principle underlying it demands that such a contract, to be effective as a release of the surety, must be one creating a valid and enforceable obligation against the creditor with respect of the enforcement of his claim against the principal debtor. Where the creditor and debtor enter into an agreement, on adequate consideration, for an extension, upon condition that the surety assent thereto, it does not amount to a release. Of course, there is none if the assent be given; and, if not, then the agreement to extend falls. *White v. Middlesworth*, 42 Mo. App. 368.

Even where the agreement is in writing, and, on its face, imports an unequivocal extension of time, it may be shown verbally, if such be the case, that it was not to become operative as a contract until the surety assented. As was said of similar testimony by an eminent English judge (Sir WILLIAM ERLE, C. J.): "It is in analogy with the delivery of a deed as an escrow; it neither varies nor contradicts the writing, but suspends the commencement of the obligation." *Wallis v. Littell* (1861), 11 C. B. (N. S.) 369. Compare *Butler v. Smith* (1858), 35 Miss. 457.

Facts going to show that a writing never acquired original vitality as a contract are not considered as infringing the rule of evidence excluding verbal contradiction of writings. *Tracy v. Union Iron Works*, 104 Mo. 193.

So it was competent for Mr. Peck to agree with Mr. Barrett to extend the indebtedness of the latter, upon condition of Mrs. Barrett's consent to that arrangement, without thereby releasing her. The instrument drawn to express the actual agreement, no less than the circumstances of its execution, indicate no purpose on Mr. Peck's part, and, still less, any execution of a purpose, to extend the time of payment of the indebtedness, without her assent. The paper, as drawn, called for her assent; but, further yet, the principal stipulations between Messrs. Barrett and Peck necessarily involved affirmative concurrence on her part. By them it appeared that the pending suit in the circuit court of Johnson county should be dismissed and the costs therein ($66.10) be paid by the plaintiffs. Mrs. Barrett was the chief party in interest as plaintiff therein, and the purpose of that suit was to invalidate this very incumbrance upon her land. It could not be dismissed without her assent, and its dismissal (and the costs paid therefor) formed an important part of the consideration supporting Mr. Peck's agreement to give time. Is it reasonable to suppose that the latter intended to

grant Mr. Barrett the extension, irrespective of his wife's consent (the effect of which would be to release her property), while insisting upon a dismissal of the pending suit to thereby strengthen and confirm the original security which the deed of trust gave? We think not.

We do not doubt, in view of the writing itself and of the surrounding facts enlightening its meaning, that the principal agreement for extension was mutually intended to be conditional upon Mrs. Barrett's consent to its terms.

In this aspect of the case it is wholly immaterial whether her consent was in fact given or not. If not, the supposed agreement to give time was inoperative and constituted no release of her property. If it was, then, of course, she has no ground of complaint.

III. But we believe the conclusion we shall presently announce need not necessarily rest upon such a narrow basis as the application of the legal principles, above declared, affords. We are satisfied, from a thorough consideration of the record, that that conclusion may properly be placed upon broader grounds.

The agreement for extension was dated and closed May 31, 1883. The first suit then pending (between the same parties as are now before the court) was dismissed in vacation, June 6, 1883, by Mr. Sparks, as attorney for Mr. and Mrs. Barrett, the plaintiffs. The costs were paid. The June term of the Johnson circuit court, at which the cause was triable, was then near at hand. The land had been advertised for sale by the trustee.

Mrs. Barrett, as a witness, admitted that she objected to Mr. Barrett's going to St. Louis at that time, because she thought "they would get him into some great trouble," but that he went; on his return she asked, "How is the Peck affair? What about our case?" and he replied, "I have had that all fixed up. It is settled."

The written agreement, of May 31, 1883, she said she found ( the Sunday before the present suit was brought) in a trunk where she and her husband kept their papers ; supposed it was given to her by Mr. Barrett, and she put it away ; that she never authorized anyone to dismiss the first suit.

The present suit was brought December 27, 1887, long after the extension of time had expired, and more than four and a half years after the supposed " settlement," and the dismissal of the first suit.  Let us bring certain legal principles to bear on these facts.   In the transaction here in consideration, Mrs. Barrett, as the equitable owner of the land ( held to her sole and separate use ), was competent to act and contract in respect to it, either personally or by an authorized agent.  She was not only capable of validly consenting to the extension of time, so as to bind her separate estate, but was likewise competent to ratify such consent, if given in her name, though without previous authority.

When one appropriates the full benefit of a transaction, taken on his behalf by another without prior authority, it is not then permissible to cast off the burden it imposes.   The benefit and burden must be accepted together, or both repudiated.  We mean, of course, after knowledge of the essential facts of the transaction.   But, in the view of a court of equity, where plaintiffs now stand and by whose principles they must be judged, one is not regarded as meeting the full measure of his duty who wilfully closes his eyes to unwelcome facts while exercising vigilance to observe and take advantage of those favorable to him in the same connection.

Whether one actually knows a given fact is often a secret to which he alone has the key, but justice is not so indulgent as to encourage his throwing the key away.   Applying to him the principles of common experience, it is held, quite generally, even in actions at law ( *Van Raalte v. Harrington* (1890 ), 101 Mo. 602 ;

14 S. W. Rep. 710 ), and, for stronger reason, in equity, that from facts and circumstances which would naturally put a person of ordinary caution, in the same situation, on an inquiry reasonably leading to a knowledge of the truth, a court may justly infer and find such knowledge. *Leavitt v. La Force* (1879 ), 71 Mo. 353. The probative force of such facts and circumstances must depend, in great measure, on the peculiarities of each case. We have already briefly sketched those which characterize the present one. They are somewhat unique, and sufficiently expressive in themselves to obviate the necessity of much further comment.

That Mrs. Barrett knew there had been some kind of settlement with Mr. Peck she admits. Her suit to set aside the deed of trust was dismissed by her attorney, and she was hence chargeable with knowledge of the dismissal. The advertisement to sell under that instrument was suspended. That some one had assumed to act for her, in some sort of settlement with Mr. Peck, was self-evident, and that her property was relieved thereby of immediate peril, equally so. The date at which she received the writing, containing the agreement, or first obtained access to it, is not disclosed with any exactness, but it plainly does appear that nothing was done in the way of suggesting any dissent to it, on her part, for more than four years from the dismissal of the first suit, and long after all the benefits it gave to the Barretts had been enjoyed.

On this evidence the learned circuit judge could scarcely have found otherwise than that she was, in equity, justly chargeable with knowledge of the terms of agreement with Mr. Peck shortly after it was made, and, necessarily, that her assent had apparently been given to those terms. With such knowledge it became her duty to speak promptly ( if ever ) in disowning the act done in her name, if without her sanction. She could not wait to reap the advantages it gave her and then cut down the fruits it secured to the other party.

We entertain no doubt that four years was an unreasonable delay in the circumstances, and that, after it, she must be held, in equity, to have fully ratified the transaction. *Chetwood v. Berrian* (1884), 39 N. J. Eq. 203 ; *Alexander v. Jones* (1884), 64 Iowa, 207 ; *Brigham v. Peters* (1854), 1 Gray, 139 ; *Deland v. Bank* (1884), 111 Ill. 323 ; *Law v. Cross* (1861), 1 Black, 533.

IV.   Some objections have been urged to details of defendants' testimony as incompetent.

In suits of this nature, where the facts come properly in review, this court may discard such parts of the evidence as may have been erroneously admitted in the trial court, without the necessity of directing a new trial.

The conclusion we have reached follows deductions drawn, in the main, from plaintiffs' own testimony or from facts undisputed or uncontradicted.

The learned trial judge, who had the advantage of a personal view of the parties, found for the defendants. No sufficient reasons have been given for reversing his finding.   The judgment is affirmed.   All the members of the court concur.