NATIONAL BANK OF COMMERCE v. BRUNSWICK TOBACCO WORKS CO., Appellant.

Division One, March 30, 1900.

Fraudulent Conveyances: EVIDENCE: INFERENCE FROM KNOWLEDGE OF SUSPICIOUS CIRCUMSTANCES. Facts known to a mortgagee of chattels which would put a person of ordinary prudence upon inquiry, and which, if followed, would lead to knowledge of the mortgagor's fraudulent intent, are evidence from which a jury may infer that the mortgagee had actual knowledge of such fraudulent intent. (Cases reviewed; Van Raalte v. Harrington, 101 Mo. 602, criticised.)

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for appellant.

(1) The validity of the mortgage and the propriety of giving the interpleader's instruction numbered 4, as modified by the court, are the questions involved in this appeal. Folding-bed Co. v. Railroad, 50 S. W. Rep. 87; Miller v. Car Co., 130 Mo. 517; Real Estate Co. v. McDonald, 140 Mo. 605. (2) Instruction numbered 4, as modified by the court, properly stated the law applicable to the evidence, and the court did not err in giving it. Van Raalte v. Harrington, 101 Mo. 602; State to use v. Mason, 112 Mo. 374; State ex rel. v. Purcell, 131 Mo. 312. (3) The court erred in granting a new trial on the ground that the mortgage was void. Barton v. Sitlington, 128 Mo. 164; Gutta-percha Co. v. Supply Co., 50 S. W. Rep. 912; State to use v. O'Niell, 52 S. W. Rep. 240; Garesche v. McDonald, 103 Mo. 1; Union Nat. Bank v. Mercantile Co., 52 S. W. Rep. 196; Mansur & Tebbetts Imp.

Co. v. Ritchie, 143 Mo. 587; Hill v. Taylor, 125 Mo. 331; Claflin v. Rosenberg, 42 Mo. 439; Bargert v. Borchert, 59 Mo. 80; Conrad v. Fisher, 37 Mo. App. 352; 18 Am. and Eng. Ency. of Law, 591; State v. Rubber Co., 50 S. W. Rep. 321; 2 Cook on Corps. (4 Ed.), secs. 599, 779.

*Elijah Robinson* and *Stuart Carkener* for respondent.

(1) If, for any one or more of the causes assigned, in the motion therefor, the new trial was properly granted, the judgment must be affirmed. Standard Milling Co. v. Transit Co., 122 Mo. 269.  (2) The trial court assigned two reasons for sustaining plaintiff's motion for new trial, viz: That it had erred in giving instruction numbered 4, and that the mortgage in question is void. Either of these reasons was good, and fully justified the action of the court. Instruction numbered 4 did not correctly state the law applicable to the subject, and was calculated to mislead the jury; and because of having given the same, the court properly granted a new trial. It could not have done otherwise. Rupe v. Alkire, 77 Mo. 641; Barrett v. Davis, 104 Mo. 549; State ex rel. v. Purcell, 131 Mo. 317.

MARSHALL, J.—Appeal by Hickman, interpleader, from an order granting plaintiff a new trial. For the purposes of this case we adopt the statement of the appellant, which is as follows:

"The defendant, the Brunswick Tobacco Works Company, was a corporation engaged in the business of manufacturing tobacco at Kansas City, Mo. It had become indebted to the plaintiff, the National Bank of Commerce of Kansas City, in the sum of $10,000, of which amount $1,500 fell due on December 30, 1895. The defendant had been endeavoring for some days or weeks to make a loan of between $4,000 and $5,000 and had spoken to Mr. C. F. Rieger, a loan broker,

whose place of business was next door to the defendant. Mr. Rieger, in casting about for someone who could make the loan, bethought himself of Mr. R. S. Hickman, the interpleader, who was a jeweler and pawnbroker, and a partner of the firm of Eyssell & Hickman, located on Union Avenue, in Kansas City. Mr. Rieger and Mr. Hickman had known each other for a long time and were on friendly terms, and Mr. Rieger knew that Mr. Hickman had money to loan, and also that he was desirous of making such a loan as would give employment to his brother, Garland Hickman.

"Mr. Rieger broached the subject to Mr. Hickman, on December 29, 1895, he having previously ascertained from Mr. Kennedy, president of the defendant company, that they would be willing to make the loan, and, as a condition, to furnish employment to one man who should be in charge while the mortgage was in force, and who should have a position after the mortgage had been discharged. The matter on December 29, was discussed in a general way, Mr. Hickman reaching the conclusion that if the security was ample, he thought favorably of making the loan.

"On the morning of December 30th, Mr. Rieger and Mr. Hickman together went to the office of the Brunswick Tobacco Works Co., and looked over the stock of tobacco and fixtures, taking a list of it, and, after some further conversation, it was decided that Mr. Hickman would make the loan of $4,700 at eight per cent with the understanding that Mr. Hickman's brother Garland would be put in possession to represent him during the life of the mortgage, and that afterwards he should be given employment.

"Mr. Hickman then went to consult Mr. Day, an attorney, and gave the latter a general outline of what kind of a mortgage he wanted drawn up. Mr. Day took the information from Mr. Hickman, and worked out a form of mortgage which he thought would answer the purpose. Later on, during the same day and about noon, Mr. Day having examined

the records to see that there were no liens on the stock, the parties all repaired to the office of the defendant, where Mr. Day, in behalf of Mr. Hickman, examined the minute book of the corporation, and not feeling entirely satisfied with the authority conferred upon the management for the execution of the mortgage, prepared, in the first place, a waiver of notice of a meeting of the directors of the company. There were but three stockholders of the company, Mr. Kennedy, Sr., the young Mr. Kennedy and Mrs. Kennedy. These three were also the directors. The waiver was duly signed by all of the three, providing for a meeting of the directors that day at one o'clock. Accordingly, at one o'clock, the directors' meeting was held, the mortgage was duly authorized by resolution of the board, and the mortgage and notes duly executed, and the former was properly acknowledged and filed in the recorder's office during the afternoon of the same day. Upon the execution and delivery of the notes and mortgage, Mr. Hickman paid over to Mr. Kennedy, for the defendant company, the sum of $4,700 in cash; $700 of that he drew out of the Union National Bank, from money which he had to his credit, and the remainder, $4,000, in cash, he took from his safe in his store on Union Avenue.

"After the delivery of the papers and the payment of the money, the possession of the property, including the key to the safe and the key to the store, was duly delivered to Mr. Hickman, and Mr. Day prepared the usual notice, stating that all property was in the hands of the mortgagee, Mr. Hickman, and posted the notice, or rather several notices, upon the door and windows, Mr. Hickman's brother, Garland Hickman, who had been telephoned for, then arrived, and was put in charge of the store by the interpleader, who then left. He remained in possession of the store until night, when it was closed, and he then went home. Sometime during the night, the National Bank of Commerce brought an

attachment suit, broke into the store, and levied upon the property covered by the mortgage.

"The interpleader, Mr. Hickman, duly filed his interplea, setting up his mortgage and possession. The plaintiff filed an answer to the interplea, claiming that the mortgage was made with intent to hinder, delay and defraud creditors, and also that it was made without authority. A trial was had before a jury. The case went to the jury upon the question as to the fraudulent intent of the defendant and the knowledge of interpleader of such intent. The jury found the issues in favor of the interpleader.

"Thereupon the plaintiff filed its motion for a new trial, which was by the court sustained, upon the ground, as set forth in the record, that the court erred in giving the interpleader's fourth instruction as amended by the court, and also for the reason that the mortgage was void."

Upon what ground the court held the mortgage to be void is not disclosed.

The instruction No. 4, modified by the court, above referred to, was as follows:

"Even though you may believe from the evidence that the Brunswick Tobacco Works Company, in giving the mortgage to Hickman, intended to hinder, delay or defraud its creditors, and that facts and circumstances were brought to the attention of Hickman, which would have put a prudent man on inquiry, and which if investigated by Hickman would have led him to a knowledge of such intent of the Tobacco Company, yet this is not of itself sufficient to defeat Hickman's claim to the goods in controversy."

The interpleader thereupon prosecuted his appeal to this court.

## I.

Appellant contends that instruction number four correctly states the law in Missouri, and in support thereof relies

on Van Raalte v. Harrington, 101 Mo. 602; State to use v. Mason, 112 Mo. 374, and State ex rel. v. Purcell, 131 Mo. 312. Or as appellant puts it: "This instruction, in substance, told the jury that *constructive notice* of the defendant's fraudulent intent was not sufficient to invalidate the interpleader's claim.......The ultimate fact for the determination of the jury is the existence of *actual knowledge* on the part of the mortgagee."

In other words that in cases of an alleged fraudulent conveyance, actual knowledge of the mortgagee of the fraudulent intent of the mortgagor must be shown and that it is not sufficient to show, as the instruction challenged states, "that facts and circumstances were brought to the attention of Hickman" (the mortgagee) "which would have put a prudent man on inquiry, and which if investigated by Hickman would have led him to a knowledge of such intent of the Tobacco Company, yet this is not of itself sufficient to defeat Hickman's claim to the goods in controversy."

Appellant relies strongly upon Van Raalte's case, *supra*, where it was said: "The doctrine of constructive notice has no application to cases like the one in hand. Where a vendee has paid a valuable consideration, and it is sought to avoid the sale because he had notice or knowledge of a fraudulent intent on the part of the vendor, the question to be submitted to the jury is whether he had notice or knowledge of the fraudulent purpose of the vendor, and not whether he had knowledge of facts which would have put a prudent person upon inquiry, and lead to a discovery of the fraud. This notice or knowledge need not be shown by direct and positive evidence. It may be inferred from other facts and circumstances. Facts which would put a prudent person upon inquiry will be evidence from which the inference may be drawn, but it should be left to the jury to make the inference."

Or otherwise stated, a mortgagee must be shown to have

had notice or knowledge of the fraudulent intention of the mortgagor: Knowledge of facts which would have put a prudent person on inquiry which if made would have shown such fraudulent intent, is not knowledge of such intent by the mortgagee: Facts which would put a prudent person upon inquiry is evidence from which a jury may infer that the mortgagee had knowledge of the mortgagor's fraudulent intent. The major premise of this proposition is unquestioned. But the minor premise and the conclusion are inconsistent. It can not be that knowledge of facts which would put a prudent man on inquiry which would have developed the fraud is not knowledge by the mortgagee of the fraud, and at the same time be true, that the jury may infer knowledge of fraud from known facts which do not amount to knowledge. Nor can it be true that a mortgagee can not be compelled to inquire where the facts known to him would put a prudent man on inquiry, and at the same time be true that notwithstanding he did not inquire and did not know yet the jury may infer that he did know because the facts put him on inquiry. The major premise and the conclusion in the Van Raalte case state the law correctly.

Van Raalte's case was followed in State to use v. Mason, 112 Mo. loc. cit. 380, 381, where it was said: "The knowledge of facts, which, if investigated and followed out, would lead to knowledge of the fraud, is not deemed sufficient under the decisions of this court." In this case however the deductions drawn in Van Raalte's case, that notwithstanding such facts are not sufficient to show knowledge yet that the jury might infer knowledge from such facts, are not noticed or approved.

But in State ex rel. v. Purcell, 131 Mo. loc. cit. 317, it was said: "While it may not be required of a purchaser of goods, in the usual course of business, to inquire into the motives of the seller, yet he can not be allowed to shut his eyes to facts and circumstances which indicate a fraudulent

motive.    He is bound to draw correct inferences from facts and circumstances of which he has knowledge, and which are consistent only with a fraudulent intent.......The rule is that, 'facts and circumstances which would naturally put a person of ordinary caution on an inquiry, reasonably leading to knowledge of the truth, are evidence from which that knowledge may be found.'    Barrett v. Davis, 104 Mo. 549."

This is the true rule.    For whilst fraud will not be presumed, but must be shown by the party alleging it (Implement Co. v. Ritchie, 143 Mo. loc. cit. 610), and while a conveyance will be held valid if the transaction consists as well with honesty and fair dealing as with fraud, still fraud is rarely susceptible of direct proof, but generally is accompanied by secrecy which it is not possible to penetrate by direct proof, and therefore it has long been the established rule in Missouri, and generally, that it is left as a question of fact to be found by the jury from all the facts and circumstances shown in evidence.    In such cases a man can not be heard to say he did not know what the facts and circumstances he is shown to have known or concedes he did know, would show to the mind of ordinary intelligence, nor can he be excused from knowing what such facts and circumstances would naturally have caused a person of ordinary caution to inquire into, and which, if inquired into would have disclosed the truth.    It is for this reason that such facts and circumstances are held to be evidence of knowledge from which it is proper for the jury to find that he did have knowledge.

The fourth instruction complained of stated the rule exactly the other way, and it was not cured by the fifth instruction given for the plaintiff if the jury found that the interpleader "knew or had information as to the" fraudulent purpose for which the mortgage was given, for under the fourth instruction the jury were told that facts and circumstances which were brought to Hickman's attention and which would have put a prudent man on inquiry, which followed out would

Lee v. Knapp & Co.

have disclosed the fraud, was not sufficient to defeat the claim, thereby excluding the right of the jury to consider such facts and circumstances as evidence of knowledge or information, and requiring the jury to find that he had actual knowledge, and not that he had knowledge of facts which to an ordinary man would have pointed to the fraud as certainly as the needle points to the pole, and which any man would have inquired into unless he intended to shut his eyes and refuse to see.

It follows that this instruction was erroneous and misleading, and that it is not merely a case of non-direction but one of prejudicial misdirection, which the trial court corrected by granting a new trial. As there must be a new trial, it is not necessary to consider now the other points argued, for they may not recur on the trial anew or if they do they can be reviewed in proper proceedings hereafter.

The judgment of the circuit court granting a new trial is affirmed on the ground that the fourth instruction given for the interpleader was erroneous, and therefore that court properly granted a new trial.

All concur, except *Robinson, J.,* absent.