## MARGARETHA APPEL, Respondent, v. EATON & PRINCE COMPANY et al., Appellants.

### St. Louis Court of Appeals, December 23, 1902.

1. **Negligence:** INJURY TO EMPLOYEE: INDEPENDENT CONTRACTOR: LIABILITY OF OWNER OF BUILDING: ACT OF BYSTANDER: TORT: CARE. Plaintiff's husband was killed by being knocked off of a temporary scaffold by a moving elevator in a shaft where he was doing carpenter work upon a building. He was in the employ of an independent contractor, but the agent for the owner of the building, for whose use the work was done, had directed the manner and mode in which the particular work should be performed: *Held*, that the owner of the building (in the circumstances stated in the opinion) was bound to exercise reasonable care to prevent such a movement of the elevator under his control as caused the death of plaintiff's husband.

2. ———: ———: ———: ———: ———. The employee of an independent contractor for the installment of an elevator, in the elevator shaft mentioned in the foregoing headnote, was working at the bottom of the shaft. He requested a bystander to run the elevator out of his way, which he did, stopping the elevator at the third floor above, afterwards the bystander was induced to run the elevator higher, by a stranger who appeared on the third floor. In consequence the elevator ran into a scaffold on which the plaintiff's husband was working: *Held*, that the contractor for the installment of the elevator was not liable for the act of the volunteer bystander in making the last upward movement of the elevator, in the circumstances described in the opinion.

3. ———: ———: ———: ———. Where an employee is present, so as to be able to direct in his work the action of a volunteer assistant, an inference is permissible that the former participates in the work of the assistant in the prosecution of the work in certain circumstances described.

4. ———: ———: ———: MASTER: SERVANT: AGENCY. The liability of an employer for negligence of his servant toward a third person depends on the principles of agency, and does not extend beyond the scope of his employment. It does not exist where the negligence is that of a substitute engaged by a servant without any authority to delegate his master's power in respect of the particular work in charge of the servant.

5. ———: ———: ———. The measure of care required of any person is marked by the circumstances of each case. It is such care as the person should have exercised in the emergency, in the opinion of the final judge of the event; and, if there is room for reasonable difference of opinion, then the criterion is the judgment of a jury determining the case, which the rules of law require of that person.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

AFFIRMED.

*Jno. F. Shepley* and *Percy Werner* for appellant Eaton & Prince Company; *Valle Reyburn* for appellant Mississippi Valley Trust Company.

(1) Defendant, the Mississippi Valley Trust Company owed no legal duty to deceased who was the servant of an independent contractor, by violation of which it could be charged with negligence and subsequent liability to plaintiff therefor. Shearman & Redfield, Negligence (5 Ed.), secs. 3, 5 and 25; Herzer v. Mfg. Co., 110 Mo. 605; Gurley v. Railway, 104 Mo. 211; Roddy v. Railway, 104 Mo. 234. (2) Defendant, the Mississippi Valley Trust Company, is not legally responsible for the injury resulting from the action of Loewenstein, towards whom it bore no relation, over whose conduct it had no control, and whose careless conduct it could not reasonably anticipate. McGrell v. Buffalo Office Building Co., 45 Cent. L. J. 133; Ziemann v. Krickhefer, 90 Wis. 497; American Brewing Assn. v. Talbot, 141 Mo. 674; Troth v. Norcross, 111 Mo. 630; Tuteen v. Hurley, 98 Mass. 211.

*Daniel Dillon* for respondent.

(1) Both defendants were guilty of negligence little less than criminal in failing to exercise care over or to give attention to the west elevator when they knew the perilous position of plaintiff's husband, and

that the running of that elevator against the scaffold on which he was working would result almost certainly in his instant death. The term "negligence" is relative, and its application depends on the situation of the parties and the degree of care and vigilance which the circumstances reasonably impose. That degree is not the same in all cases; it may vary according to the danger involved in the want of diligence. Cooley on Torts (2 Ed.), p. 752. (2) "Negligence is no more nor less than this; the failure to preserve, for the protection of the interests of another person, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury." Id. Vaughn v. Scade, 30 Mo. 605; Frick v. Railway, 75 Mo. 609; Dowell v. Guthrie, 99 Mo. 663; Hanlon v. Railway, 104 Mo. 390; Quirk v. St. L. U. El. Co., 126 Mo. 279. (3) In order to give a cause of action for negligence it is not necessary that there should have been any contractual relation between defendant and the person injured; nor is it necessary that the relation of master and servant should have existed between them. Morgan v. Cox, 22 Mo. 373; Totten v. Cole, 33 Mo. 138. (4) Even in the case of a trespasser or of one guilty of negligence, when he is seen or known to be in a position of danger, it is negligence not to use care to avoid injuring him. 1 Shearman & Redfield on Negligence (5 Ed.), secs. 99-100; Rinne v. Railway, 100 Mo. 228; Guenther v. Railway, 95 Mo. 286; 108 Mo. 18; Fiedler v. Railway, 107 Mo. 645; Reardon v. Railway, 114 Mo. 384; Hicks v. Railway, 124 Mo. 115; Bunyan v. Railway, 127 Mo. 12. (5) Even if this court should believe that any reversible error was committed in the trial court against one of these defendants and not against the other, this court will not reverse the entire judgment, but would reverse it as to the defendant against whom error had been committed, and affirm it as against the other. Kleiber v. Railroad, 107 Mo. 240; State ex rel. v. Tate, 109 Mo. 269; Neenan v. City of St. Joseph, 126 Mo. 89; Wiggins v. St. Louis, 135 Mo. 558; O'Rourke v. Railroad, 142 Mo. 342.

BARCLAY, J.—We adopt the greater part of the lucid statement of the facts and of the proceedings in the trial court submitted by the learned counsel for the trust company, one of appellants, making some changes therein to conform to our views upon certain of the controverted points.

This is an action under the statute (R. S. 1899, sec. 2865) brought by plaintiff, the widow of George Appel, against Eaton & Prince Company, and the Mississippi Valley Trust Company.

In November, 1897, defendant, the trust company, was owner of a ten-story office building on Olive street between Eighth and Ninth streets in the city of St. Louis, commonly known as the Burlington Building, which was undergoing a course of general repairing, each department of the work being performed by a contractor. R. P. McClure was the general contractor for a portion of the repairs, including the carpenter work, and the deceased Mr. Appel was a carpenter in his employ.

The co-defendant, Eaton & Prince Company, was the contractor for elevators in the building. The contract for that work, which was put in evidence by one of the defendants, recited that after the day of commencing work on the elevators, the repairing contractor should have the uninterrupted use of the hatchways and of so much of the building as might be necessary to get the machinery and the elevators in position, but he was to keep one elevator in operation for the use of tenants and material.

Other classes of repairs were delegated by other separate contracts to other contractors to the number of twenty-five or more.

A. E. Benoist had charge of the building, representing its owner, the trust company, and he occupied an office therein.

John H. Baird was the general agent in St. Louis of Eaton & Prince Company. Jacob Hirsch was the superintendent of the work being performed by that company. Both Messrs. Baird and Hirsch were at

the building daily. E. R. Van Sickle was a workman in the employ of the last-named company. He was designated by Mr. Baird as an assistant superintendent. The Eaton & Prince Company had in turn sublet part of the elevator work (including the wiring) to Charles Briner.

November 24, 1897, the work upon the building was approaching completion. The elevators were nearly finished. On that day the east elevator was in operation for the convenience of the tenants of the building, but the west elevator was (and had been for a period of several days) not in common use. It was "dead" as styled by the witnesses. These were hydraulic elevators, that is, they were operated by water pumped to the roof by steam power from an engine in the cellar of the building.

W. A. Savage, an engineer in the employ of the trust company, operated and managed the steam engine and boiler. To stop the elevators it would have been necessary to turn off the steam and water entirely.

On the day mentioned, carpenters (including Appel) in the employ of McClure were engaged in casing the elevator shafts, to perform which work a scaffold was built across the west elevator shaft upon which workman stood as the work advanced from the top floors of the building downward, one shaft at a time. On the day of the accident the workmen were engaged between the seventh and eighth floors on the west elevator shaft. The higher floors had been finished.

During the day some of the carpenters, including deceased as well as the general contractor, McClure, applied to Benoist to have the east elevator cease running for passenger use, so that the work of casing the shaft could be transferred to the east elevator, but Benoist declined, replying that the east elevator was required for the convenience of the tenants of the building. The west, or "dead" elevator, while not in general use for passengers, had, on November 24, been

operated eight or ten times by workmen employed by Briner, the sub-contractor of Eaton & Prince Company, engaged in wiring the annunciators of the west elevator and standing on the top for that purpose. These men assert that they had been cautioned against running the elevator so high or so far as to strike the scaffold of the carpenters working in this elevator shaft.

About 4 o'clock p. m. the men employed in wiring the west elevator ceased work, lowered the elevator to the basement, and told Savage, the engineer, to turn off the steam, but Van Sickle told Savage that he (Van Sickle) wanted to use this elevator a while and took charge of it to finish the elevator pit as he had been directed to do by both Messrs. Hirsch and Baird. At this time (about half-past four o'clock p. m.) Israel Loewenstein, formerly but not then in the employ of Eaton & Prince Company, entered the building and went to the west elevator where he saw Van Sickle at work putting in a casing of brickwork around the shafting. When he had finished, he asked Lowenstein to take the elevator out of his way, so that he (Van Sickle) could clean out the debris beneath. Loewenstein then ran the elevator to the second floor to find a friend, as he testifies, and then continued to the third floor in the same search; at that floor he stopped the elevator. An outsider then came along, unknown to Loewenstein, and asked the latter to take him upstairs. Loewenstein replied that the elevator was not in use but "dead," and to take the east elevator. The man said he was in a hurry. Loewenstein then took him in the elevator to the seventh floor, where the elevator struck the scaffold on which plaintiff's husband was at work, so injuring him that he died nine days afterwards.

The foregoing is a sufficient outline of the main features of the case. There was testimony tending, at least, to establish the facts recited above. Some further items of proof will be mentioned in the course of the opinion to give a complete view of the vital point of the litigation which is found in the acts of Messrs. Van

Sickle and Loewenstein and their relation to the Eaton & Prince Company.

The learned trial judge refused an instruction in the nature of a demurrer to the evidence asked by each of defendants. He gave a number of instructions which will be touched upon later.

The jury found for plaintiff against both defendants, and assessed her damages at $3,000. Both defendants moved for a new trial without success. Then they appealed to the Supreme Court after saving exceptions in the usual way. The Supreme Court transferred the cause to this court under the provisions of the law of 1901 increasing the jurisdiction of the Courts of Appeals (Laws 1901, p. 107).

1. Each of the defendants insists that there is no liability on its part. As to the trust company the facts admitted, or shown by its own testimony, make out a perfectly clear case of liability.

The plaintiff's husband was in the employ of McClure, the chief contractor for the work being done upon the building. It is clear, however, that whatever may have been the actual terms of the contract on that point, the trust company was exercising a direct supervision and control over the execution of the very work on which Appel was engaged at the time of his injury. Benoist was entirely frank in his statement of the facts. His interview with the Messrs. McClure and Appel in regard to the placing of the scaffold on which Appel was working when the accident happened was quite sufficient testimony to prove that he was authorized to direct, and did in fact, direct the manner and mode of performing that special work. These facts enlarge the liability of the trust company (in respect of the particular work to which its direction or control was extended) far beyond the limits which would bound it if Appel had been indeed the servant of a truly independent contractor. Burgess v. Gray, 1 M. G. & S. (1 C. B.) 578; Ardesco Oil Co. v. Gilson, 63 Penn. St. 146.

The trust company having full knowledge of the work at which Appel was engaged was charged with the duty of exercising reasonable care in the circumstances not to permit the west elevator to run into the scaffold on which Appel was working. The engine and power of the trust company were essential to any movement of the elevators. The movements of the west elevator could have been so supervised by reasonable care as to prevent any such catastrophe as occurred. The Eaton & Prince Company had the "uninterrupted use" of the hatchway or elevator shaft, so far as might be necessary to put the machinery and elevators in position; but that company had nearly concluded its part of the improvements. Evidently it did not claim, nor was it allowed, the exclusive use or control of the elevator shaft or well wherein the accident took place.

The measure of reasonable care is to be marked by the circumstances of each particular case. Juridically it is at least such care as the person whose conduct is in question should have exercised in the particular emergency, in the opinion of the final judge or judges of each case. If there is reasonable room for variation of opinion on that subject then the criterion is that measure or degree of care which a jury regards as obligatory upon that person in the circumstances of the case in hand. The care which one owes to another is by no means dependent on a contractual relation between them, although the obligation of care often arises from contract supplementing or enlarging the duty otherwise imposed by law.

The learned trial judge in one of the instructions defined the grounds of liability of the trust company as follows:

"And if the jury further believe from the evidence that defendant, the Mississippi Valley Trust Company, through its agents and servants, had control of said elevator, and before said Appel went to work in said shaft, or while he was working in the same, promised said Appel and his employer, McClure, that

said elevator should not be run while he was working on said scaffold or platform, and if the jury further believe from the evidence that said Mississippi Valley Trust Company, then and there, through its agents and servants had control of said elevator, and knew that said scaffold had been erected in said shaft, and that a man, or men, were working thereon, and carelessly and negligently allowed and permitted said elevator to be run up in said shaft and strike said scaffold without notifying said Appel in time to enable him to avoid being injured, and that said Appel was injured thereby, and thereafter died from said injuries, then the jury will find in favor of plaintiff against the said Mississippi Valley Trust Company.''

There was ample evidence to sustain the theory of the foregoing declaration of law, and by others the more formal facts of plaintiff's relationship to the deceased, the nature of his employment, etc., were submitted for findings.

Having allowed Appel to be set to work in such a place, ordinary care on the part of the manager of the premises required such safeguards as would effectually preclude the accident which befell plaintiff's husband.    Hardler. v. Buck's Stove Co., 136 Mo. 3.

Ordinary care required that the place where Appel was at work should be maintained in a condition of reasonable safety against such hazards as befell him.    He had a right to rely on the assurance involved in his assignment to do the work at which he was engaged when the catastrophe happened.    It is part of an employer's duty to use ordinary care to make the place where his employee is at work reasonably safe.    In this instance the manager of the building was charged with that duty, in the peculiar circumstances already described.    We hold that there was ample evidence to support the verdict for plaintiff as against the trust company, and that there was no error in refusing the peremptory instruction in its favor.

2.    There is testimony tending to show that Van Sickle was a workman authorized to represent the

Eaton & Prince Company in finishing the work remaining to be done by it in the elevator shaft or hatchway. He was empowered to take such necessary steps as appertained to the proper and complete performance of the work which had been assigned to him by Hirsch, the superintendent, whose general authority to act for the Eaton & Prince Company is unquestioned. The work allotted to Van Sickle was to lay some brick at the bottom of the pit in the west shaft, to fill some holes there, to clean out the shaft and to gather up the company's tools. It may be inferred that he had authority to move the elevator, or to cause it to be moved, so far as might be necessary to his work, and that when the entire work was finished he might move the elevator sufficiently to see that it could be operated properly. His employer had guaranteed by its contract of construction that the elevator work should be so finished.

In this situation of affairs Van Sickle requested Loewenstein to run the elevator out of his way. Loewenstein was a former employee of the Eaton & Prince Company, who happened to be there on an errand of his own, as already described. His act in operating the elevator caused the injury as has been already narrated, but not as agent for said company.

The account given by Van Sickle of his order to Loewenstein to run the elevator we shall quote literally:

"Q. What part of the building were you in? A. In the basement.

"Q. What were you doing? A. I was fixing some bricks around the sheaves in the pit, under the bottom of the hatch.

"Q. Which pit, the east or west one? A. The west.

"Q. The east elevator was being used for passengers? A. The east elevator was running for passengers.

"Q. The west elevator was, prior to the injury, not being used? A. It was supposed not to be; I wanted it out of my way; I asked a man to take it out of my way.

"Q.  Was it in your way at the time?  A. Yes, sir.

"Q.  What did you do?  A. I told the man to get in and run it up out of the way.

"Q.  What was his name?  A. Loewenstein.

"Q.  What did he do?  A. He ran it up out of my way.

"Q.  How far did you tell him to run it?  A. I don't believe I told him any particular distance.

"Q.  He got in and started it up?  A. Yes, sir.

"Q.  What took place?  A. The next thing I knew, there was a crash above and timbers came tumbling down the hatch.

"Q.  You found an accident had happened?  A. Yes, sir."

The testimony for this defendant tends to show that neither Van Sickle nor Loewenstein knew that Appel was at work in the elevator shaft on the scaffold. Yet the facts in evidence from other sources strongly tend to prove that Van Sickle had such knowledge. He certainly had ample means of knowledge; and it is often a fair and reasonable inference, in cases at law as well as equity, that from facts which point distinctly toward knowledge of another fact such knowledge may be inferred.   State ex rel. v. Purcell, 131 Mo. 312; Nat. Bk. of Commerce v. Tobacco Co., 155 Mo. 602.

The circumstances that the party sought to be charged with knowledge denies, it does not conclude the matter.  Despite the denial the fact may be found, upon a proper exhibit of testimony which justifies the inference.  Here Van Sickle had been engaged for some time at the elevator construction.  As a witness he admitted that he thought he had been "through the building up to the top," but he "did not remember being there the day before."  On the day before the accident "they had been gathering up things around the building, doing some work on the machines."

His rank in the service of his employer is not very definite.  Hirsch, the superintendent, testified that Van Sickle was a "helper" whose duties were "to

do general work and assist a mechanic," but not to hire or discharge anybody. Baird, a managing officer of·the Eaton & Prince Company (who made the contract on its behalf for the entire elevator work), testified that Van Sickle was a workman under the direction of Hirsch. Later, on cross-examination, he admitted that Van Sickle was "not exactly foreman, but took the place of the foreman at that time."

According to everybody's testimony, Van Sickle was in charge of the unfinished work to be done by that company on the day of the accident.

If, as the jury found, Van Sickle was aware of the position of Appel or that workmen were at work upon the scaffold in the upper part of the shaft, that fact was entitled to weight in ascertaining whether he used ordinary care in performing the service for his employer which the jury might reasonably have found to include such movements of the elevator cab itself as might be convenient or necessary to make sure that the general work of the Eaton & Prince Company had been fully performed.

The benefit of every reasonable inference of fact which the evidence will bear must be given to plaintiff in determining the question whether the testimony tends to prove negligence on the part of a defendant. Giving to plaintiff·the weight of every inference we can glean from the facts in this record, we must concede that Van Sickle knew of the dangerous position of plaintiff's husband, and that he might be found to have had authority to run the elevator in the shaft as part of the final steps of the work he then had in charge. In this state of the case he put Loewenstein in charge of the elevator with the direction to run it out of his (Van Sickle's) way and gave him no directions to go any particular distance. He did not warn him of the presence of the workmen overhead. He allowed him to take the elevator to get it out of the way, without any directions not to run it to the height where Appel was working. What ensued has been already described. It was originally the impression of the writer that this

defendant was not liable in the circumstances described. But my learned colleagues are of a different opinion and at length my concurrence is yielded to their view that it was the duty of the Eaton & Prince Company's agent on the ground, to whom the use of the elevator was entrusted (by the contract in evidence) to caution Loewenstein not to run the elevator up the shaft far enough to collide with the workmen there engaged, and that the omission of such precaution was a failure to exercise reasonable care in the circumstances.

The different relationship of service between the man who did the damage with the elevator and Appel precludes the application of the rule of exemption of the master from liability to a servant for injury by his fellow-servant. These men were not fellow-servants within the meaning of that rule. The right to use the elevator shaft which the Eaton & Prince Company undoubtedly had at the time, required it and its employees to use reasonable care not to injure others who might be properly at work in the shaft for other employers.

Without further taking up the various points of exception in detail, we are convinced, after a full re-hearing of the appeal, that the cause was properly submitted to the trial court, and that the judgment should be affirmed as to both defendants.

The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.