PHILLIPS & COMPANY, Respondents, v. RULE, Defendant, KEIFER et al., Interpleaders, Appellants.

### St. Louis Court of Appeals, April 30, 1907.

FRAUDULENT CONVEYANCES: Intent to Defraud: Knowledge of Purchaser. A purchaser of chattels which are sold with the intent on the part of the seller to defraud his creditors is not affected by the fraud unless he has knowledge of it, but such knowledge need not be shown by direct evidence; a knowledge of facts which would put a prudent person on inquiry is not sufficient of itself to charge the purchaser with participating in the fraud, but such circumstances may be shown and may be considered by the jury as tending to show knowledge.

Appeal from Clark Circuit Court.—*Hon. E. R. McKee,* Judge.

REVERSED AND REMANDED.

*John D. Smoot* and *Whiteside & Yant* for appellants.

The purchaser must have actual knowledge of the purpose of the debtor to defraud creditors. It is not sufficient that he had knowledge of such facts as would put an ordinary man on inquiry. Sammons v. O'Neil, 60 Mo. App. 530. Hence the instruction offered and given by the court that if they had sufficient knowledge to put an ordinary man on inquiry was reversible error, as held by the court in White v. Million, 102 Mo. App. 440; Van Rault v. Harrington, 101 Mo. 602; State to use v. Mason, 112 Mo. 374.

*Charles Miller, N. M. Pettingill* and *O. D. & G. M. Cullihan* for respondents.

STATEMENT.—In 1902, W. P. Rule was engaged in the general mercantile business at Wyaconda, Missouri.

Charles Keifer was his security on promissory notes to the Citizens Bank of Memphis, Missouri, and the Gorin Savings Bank of Gorin, Missouri, for about two thousand dollars. Rule was also indebted to his clerk, W. J. Smith, for wages and borrowed money, in the sum of $625, for which he had given Smith his promissory note, bearing interest at eight per cent per annum. On October 15, 1902, Rule sold his entire stock of goods to Keifer and Boltz for a consideration of $5,250. Keifer agreed and assumed to pay the notes on which he was security for Rule, and Boltz agreed to pay Smith the $625 due him. The balance of the purchase price was to be paid in cash. Immediately after the sale Keifer and Boltz took possession of the goods and continued to sell them from the store theretofore occupied by Rule. In a few days after the sale and after Keifer and Boltz took possession, plaintiffs brought suit against Rule by attachment, and a portion of the goods sold to Keifer and Boltz was seized and attached as the property of Rule. Keifer and Boltz interpleaded for the goods attached. A trial of the interplea was had and resulted adversely to the interpleaders.

The evidence shows that no invoice of the stock of goods was taken at the time, or before the sale. But Boltz was in and about the store for ten days or two weeks before the sale, taking notes of the stock; and Keifer was in and about the store on several occasions just before the sale. Boltz took up the Smith note by substituting his own and paying the interest due. Interpleaders' evidence tends to show the amount of cash agreed to be paid was actually paid to Rule, who immediately thereafter disappeared from the country, leaving his family at Gorin. The only sign over the store was "Fleshman Building." This sign was not removed by interpleaders. After taking possession of the goods, interpleaders rearranged them, righted up the store and gave out to the public that they were the owners and in

possession. Defendant's evidence tends to show the stock of goods was worth about $6,000, and it cast some doubt on the fact of the payment of any cash to Rule by the interpleaders. There is also some evidence showing that the sale was made and a bill of sale prepared and signed after supper time, on the evening of October fifteenth.

BLAND, P. J. (after stating the facts.)—1. The interpleaders, at the close of all the evidence, moved the court for a peremptory instruction to the jury to find for them. Interpleaders contend that this instruction should have been granted. We think not. The circumstances of the transaction, we think, would warrant a jury to find the sale was not bona fide. The sale of a large stock of goods in bulk, by an insolvent, without invoice or appraisement and made in haste, is certainly some evidence from which a jury might infer fraud.

2. The court gave all the instructions asked by interpleaders, but gave the following erroneous instructions for the attaching creditor, to-wit:

"1. The court instructs the jury, that although the bill of sale offered in evidence, was executed by W. P. Rule, to Keifer and Boltz and that they took possession under it, still if you believe from the greater weight of the evidence the bill of sale was executed and the possession given by Rule for the purpose of hindering, delaying or defrauding any of the creditors of W. P. Rule in the collection of their debts, and that Keifer and Boltz, or either of them knew of such purpose of Rule, in making the bill of sale, and giving possession or had knowledge sufficient to put an ordinary prudent man on inquiry, and participated in such intent, in any manner, then such bill of sale and such taking possession are void, as to the attaching creditors of Rule, and it makes no difference as to what the consideration in the bill of sale was.

"2.   The court instructs the jury that in order to determine whether Keifer and Boltz, the interpleaders, had knowledge of the intent of W. P. Rule to defraud, hinder or delay his creditors if such intention has been shown as to Rule, you may take into consideration the acts and conduct of Keifer and Boltz and Rule as well as all of the facts and circumstances surrounding the whole transaction between them in the matter of the sale and purchase of the store and the amount paid for the goods; and if the jury believe from the greater weight of the evidence that sufficient knowledge or information was obtained by Keifer and Boltz or either of them, to put a reasonably prudent man on inquiry, then the jury have a right to infer that Keifer and Boltz had knowledge of the fraudulent character of the transaction, if you further find that it was fraudulent.

"3.   The court instructs the jury that if they believe from the greater weight of the evidence that the interpleaders, Keifer and Boltz purchased the stock of goods of W. P. Rule secretly, quickly and without fixing the amounts of the various kinds of goods and their value, then these are circumstances the jury may take into consideration in determining whether the said Keifer and Boltz participated in the fraudulent intent of the said W. P. Rule or had knowledge of such facts as would put a reasonable man upon inquiry, if you find that there was a fraud on the part of W. P. Rule as defined in these instructions."

The error in these instructions consists in this: They told the jury if Rule, in making the sale, intended to hinder, delay or defraud his creditors, and the interpleaders had sufficient knowledge of Rule's fraudulent intent, to put an ordinarily prudent person on inquiry, then the jury might infer they were participants with Rule in the fraud.

In Sammons v. O'Neill, 60 Mo. App. l. c. 537, Judge ELLISON said: "But this rule (in respect to laches)

Phillips & Co. v. Rule.

will not apply to the sale of personal property—it could not well apply without hampering the barter and sale of such property to an embarrassing extent. It is not usual for the purchaser to seek out the motive of the seller. A purchaser, though he is possessed of information which would put a prudent man on inquiry, can neglect to make the inquiry and yet be safe in his purchase. But the fact that he had such knowledge as would have excited the inquiry of a prudent man, may be considered by the jury, when they come to determine the question whether he did have actual knowledge of the fraud." While knowledge of facts which would put a prudent person on inquiry, which if made would show a fraudulent intent, is not knowledge of such intent, it is, however, a circumstance to be considered by the jury as tending to show knowledge of such fraudulent intent. [Bank v. Tobacco Co., 155 Mo. l. c. 608, 56 S. W. 283; Barrett v. Davis, 104 Mo. 549, 16 S. W. 377.] As said by Judge MACFARLANE, in State ex rel. v. Purcell, 131 Mo. l. c. 317, 33 S. W. 131; "While it may not be required of a purchaser of goods, in the usual course of business, to inquire into the motives of the seller, yet he cannot be allowed to shut his eyes to facts and circumstances which indicate a fraudulent motive. He is bound to draw correct inferences from facts and circumstances of which he has knowledge, and which are consistent only with a fraudulent intent."

If Rule was guilty of fraud, the interpleaders are not affected by his fraud, unless they had knowledge of it; but such knowledge need not be shown by direct or positive evidence. It may be proven by the facts and circumstances leading up to and attending the sale. One of these circumstances may be knowledge of facts which would put a prudent person on inquiry, which if interpleaders had made would have shown Rule's fraudulent intent; but the knowledge of such facts is not knowledge

124 App.—34

of Rule's fraud, nor a fact from which knowledge can be inferred, as declared by plaintiff's instruction.

For the error noted, the judgment is reversed and the cause remanded. All concur.